A11A2408. PINNACLE BENNING, LLC et al. v. CLARK REALTY CAPITAL, LLC et al.
(724 SE2d 894)

DILLARD, Judge.

Pinnacle Benning, LLC ("Pinnacle") and Clark Pinnacle Benning LLC ("CPB"), by and through Pinnacle, appeal the trial court's dismissal of a complaint against Clark Realty Capital, LLC ("Clark Realty"), and Clark Benning, LLC ("Clark Benning") (referred to collectively as "Clark"). Pinnacle contends that the trial court erred by (1) dismissing a count for declaratory judgment, (2) dismissing a count for a derivative action for failure to make a formal demand to file suit, and (3) dismissing the complaint without allowing Pinnacle to amend same. For the reasons set forth infra, we affirm the trial court's dismissal of Pinnacle's complaint but remand for the entry of an order specifying that these counts be dismissed without prejudice.

The undisputed record shows that CPB is a limited-liability company that is the managing member of Fort Benning Family Communities, LLC (FBFC).[1] In this regard, Pinnacle is a 30% member of CPB and Clark Benning is a 70% member. Additionally, Pinnacle serves as the "Pinnacle Manager" of CPB and Clark Realty serves as the "Clark Manager."

Pinnacle filed a complaint against Clark in September 2010, alleging that Pinnacle and CPB are entities that were set up to operate a military housing project at Fort Benning, Georgia, as part of a joint venture entered into by Clark Realty and American

---

[1] We note that this case is tangentially related to other litigation addressed by this Court in *Am. Mgmt. Serv. E., LLC v. Fort Benning Family Cmtys., LLC*, 313 Ga. App. 124 (720 SE2d 377) (2011).

Management Services, a nonparty affiliate of Pinnacle. Pinnacle further alleged that, due to the corporate structure, Clark Realty controlled both CPB and FBFC and, therefore, Clark Realty "must exercise its good faith business judgment on behalf of both entities as a whole, creating inherent conflicts, especially when acting as FBFC in a fashion adverse to Pinnacle's interests as the property manager at Fort Benning."

After describing various and sundry allegations of impropriety with regard to related entities and joint ventures, the complaint contended that "Clark is using its control over [CPB] and FBFC to execute a private vendetta against Pinnacle that is solely to [Clark's] financial benefit, and in derogation of the rights and interests of Pinnacle, the Joint Venture, [CPB], FBFC, the Army and the residents of Fort Benning." Specifically, Pinnacle alleged that Clark sought to terminate Pinnacle's property-management agreement and engaged an independent consulting firm to conduct audits of Pinnacle's management operations at Fort Benning. Additionally, Pinnacle alleged that Clark employed "one of the most elite and expensive litigation firms in the country" shortly thereafter to assist "in executing [Clark's] unlawful plan to usurp Pinnacle's rights under the parties' Joint Venture." Thus, Pinnacle argued that Clark abandoned and betrayed its duties as manager of FBFC because FBFC "is funding [Clark's] scorched earth audit and litigation campaign against Pinnacle."

In response to these alleged wrongdoings, Pinnacle sought to audit Clark's books and records, pursuant to Section 3.11 of CPB's operating agreement, which provides that

> [t]he Pinnacle Manager shall have the right at the Pinnacle Manager's expense upon reasonable advance written notice to the Clark Manager to review and inspect the books and records of the Company or to cause the books and records of the Company to be audited by an independent third party auditor selected by the Pinnacle manager and reasonably satisfactory to the Clark Manager.[2]

And Pinnacle claims that after sending the necessary written notice to Clark that it intended to exercise this right, Clark responded "by emailing a limited set of documents consisting of the Operating Agreements, the LLC formation agreements and the LLC tax returns for [CPB]." But according to Pinnacle, this response was

---

[2] We note that the operating agreement itself appears nowhere in the record before us, but the parties do not dispute the wording of Section 3.11, quoted *supra*.

insufficient to satisfy its rights under the operating agreement. Pinnacle further alleged that Clark ignored a subsequent letter indicating that Pinnacle had selected an independent third party to audit the books and records.

The remainder of Pinnacle's complaint contained three counts, only two of which are at issue in this appeal.[3] The first count alleged that Clark's response to the written demand was "in breach of Section 3.11 of the Operating Agreement of [CPB]" and sought declaratory judgment that the relevant section "affords Pinnacle Benning the right to inspect and audit all books and records of the Company, including but not limited to all books and records pertaining to the Company's business and purpose of acting as a managing member of FBFC."

The second count of the complaint alleged that Clark

> breached its duties of loyalty and failed to act in good faith with reasonable disinterested business judgment by . . . causing FBRC [sic] to expend substantial monies on professional fees to [the law firm and independent consulting firm], to the financial detriment of [CPB]; causing [CPB] to act solely for the private purposes of [Clark], and against the interests of the members of [CPB] collectively; and causing [CPB] to act against the interests of FBFC, and in derogation of its duties of disinterested and good faith business judgment as managing member of FBFC.

Thus, Pinnacle sought (1) "a full accounting of the costs to the Company resulting from Clark Realty's conflicts of interest and breaches of duty" and (2) relevant refunds to CPB and FBFC from Clark Realty. In this count, Pinnacle also explained that it had not made a demand upon CPB to commence the cause of action because doing so would have been futile for a number of reasons, including that it "would in essence be asking Clark Realty, as the Clark Manager of [CPB], to authorize and commence suit against itself . . . ."

Thereafter, Clark moved to dismiss Pinnacle's complaint with prejudice for failure to state a claim upon which relief can be granted,[4] arguing that Pinnacle sought an impermissible advisory opinion on the merits of a breach-of-contract action for rights that had already accrued, and that Pinnacle's failure to make a demand of CPB required dismissal of the derivative action. The trial court agreed and dismissed Pinnacle's complaint. This appeal by Pinnacle follows.

---

[3] Pinnacle does not appeal the dismissal of its third count.

[4] *See* OCGA § 9-11-12 (b) (6).

At the outset, we note that "[w]e review de novo a trial court's ruling on a motion to dismiss."[5] And we recognize that in the case sub judice, Clark's motion to dismiss, the trial court's order granting same, and the parties' arguments on appeal all frame the issues in the context of a failure to state a claim upon which relief can be granted. But as will be explained infra, Pinnacle's claims were in actuality properly dismissed for a lack of subject-matter jurisdiction,[6] and we affirm the dismissal under the right-for-any-reason doctrine.[7] With the foregoing in mind, we will now address each of Pinnacle's enumerations of error in turn.

1. Pinnacle first contends that the trial court erred by dismissing its count for declaratory judgment with regard to its right to audit Clark's books and records. We disagree.

As detailed supra, Pinnacle alleged that Clark was in breach of the operating agreement by refusing to allow Pinnacle to inspect and audit *all* books and records, including those pertaining to Clark's role as managing member of FBFC, when Clark responded "by emailing a limited set of documents consisting of the Operating Agreements, the LLC formation agreements and the LLC tax returns for [CPB]." Accordingly, Pinnacle sought a declaration that the relevant section of the operating agreement entitled Pinnacle to same. But the trial court held, and we agree, that Pinnacle did not seek guidance as to *future* actions but instead sought a determination as to whether Clark had already breached a contractual obligation by denying Pinnacle the rights afforded by the operating agreement.

It is well established that under the Declaratory Judgment Act,[8] a superior court may enter declaratory judgment "in cases of actual controversy, and to determine and settle by declaration any justiciable controversy of a civil nature" when it appears that "the ends of justice require that such should be made for the guidance and protection of the petitioner, and when such a declaration will relieve the petitioner from uncertainty and insecurity with respect to his

---

[5] *Upper Oconee Basin Water Auth. v. Jackson County*, 305 Ga. App. 409, 414 (2) (699 SE2d 605) (2010).

[6] *See Empire Fire & Marine Ins. Co. v. Metro Courier Corp.*, 234 Ga. App. 670, 673 (2) (507 SE2d 525) (1998) ("A dismissal of a declaratory judgment action on the ground the petitioner needs no direction from the court as to future action is a dismissal for want of subject matter jurisdiction."); *McGregor v. Stachel*, 200 Ga. App. 324, 324-25 (1) (408 SE2d 118) (1991) (explaining that the written demand requirement for a derivative action "has nothing to do with the merits of the . . . claim but only with a procedural prerequisite for asserting such a claim," which is a matter in abatement).

[7] *See, e.g., Little v. Fleet Fin.*, 224 Ga. App. 498, 503 (1) (481 SE2d 552) (1997) ("A trial court's judgment, right for any reason, will be affirmed.").

[8] *See* OCGA § 9-4-1 et seq.

rights, status, and legal relations."[9] But a declaratory judgment may not be merely advisory in nature.[10] Thus, when a "party seeking declaratory judgment does not show it is in a position of uncertainty as to an alleged right, dismissal of the declaratory judgment action is proper . . . ."[11]

In this regard, a party seeking declaratory judgment

> must show facts or circumstances whereby it is in a position of uncertainty or insecurity because of a dispute and of *having to take some future action* which is properly incident to its alleged right, and which future action without direction from the court might reasonably jeopardize its interest.[12]

This is so because the purpose of declaratory judgment "is to permit one who is walking in the dark to ascertain where he is and where he is going, to turn on the light *before* he steps rather than after he has stepped in a hole."[13] Moreover, "[i]t has long been held that an action for a declaratory judgment does not lie where a simple action for breach of contract will give full and complete relief."[14]

And here, because the alleged rights of the parties have already accrued—Pinnacle has attempted to audit *all* of Clark's books and records and maintains that it has the right to do so, but Clark has refused Pinnacle access to all but certain documents—there is no future action upon which the trial court may provide direction on this particular issue.[15] Accordingly, when

> the petition shows that the rights of the parties have

---

[9] *Capitol Infrastructure, LLC v. Plaza Midtown Residential Condo. Ass'n*, 306 Ga. App. 794, 798 (1) (702 SE2d 910) (2010) (punctuation omitted).

[10] *See id.*

[11] *Id.* at 799 (1) (punctuation omitted).

[12] *Farm & Home Life Ins. Co. v. Skelton*, 235 Ga. App. 507, 508 (510 SE2d 76) (1998) (emphasis supplied) (punctuation omitted).

[13] *Id.* (punctuation omitted); *see also Milton Frank Allen Publ'ns, Inc. v. Ga. Ass'n of Petroleum Retailers, Inc.*, 219 Ga. 665, 671 (1) (a) (135 SE2d 330) (1964) ("The object of the declaratory judgment is to permit determination of a controversy *before* obligations are repudiated or rights are violated." (punctuation omitted)).

[14] *Braddy v. Morgan Oil Co.*, 183 Ga. App. 157, 158-59 (2) (358 SE2d 305) (1987); *see also City of Summerville v. Sellers*, 82 Ga. App. 361, 361 (61 SE2d 160) (1950) (holding that petition for declaratory relief should be denied when a breach of contract action would provide full and complete relief and petition lacked "an alleged necessity for an adjudication to guide and protect the petitioner from uncertainty and insecurity with respect to future conduct").

[15] *Compare Atlanta Cas. Co. v. Fountain*, 262 Ga. 16, 18 (413 SE2d 450) (1992) ("[D]eclaratory judgment is not available where a judgment cannot guide and protect the petitioner with regard to some future act—as where an insurance company has already denied a claim."), *and Builders Ins. Group, Inc. v. Ker-Wil Enters., Inc.*, 274 Ga. App. 522, 523 (2) (618 SE2d 160) (2005) (upholding dismissal of declaratory judgment action when insurance

*already* accrued and no facts or circumstances are alleged which show that an adjudication of the plaintiff's rights is necessary in order to relieve the plaintiffs from the risk of taking any future undirected action incident to their rights, which action without direction would jeopardize their interest, the petition fails to state a cause of action for declaratory judgment.[16]

Thus, the trial court did not err in dismissing Pinnacle's count for declaratory judgment.

Nevertheless, as detailed supra,[17] Clark sought dismissal of this count under a theory that Pinnacle failed to state a claim upon which relief could be granted, and the trial court's order appears to have granted the motion to dismiss under this same theory. Additionally, the trial court's order does not specify whether this count was dismissed with or without prejudice, and we presume that actions have been dismissed *with* prejudice when a motion is granted under OCGA § 9-11-12 (b) (6).[18] We must therefore remand to the trial court for the entry of an order dismissing the count without prejudice, because the involuntary dismissal of a declaratory-judgment action for want of justiciability does not operate as an adjudication on the merits and is instead an issue of subject-matter jurisdiction.[19]

---

company had already denied coverage), *with City of Atlanta v. Hotels.com, L.P.*, 285 Ga. 231, 236-37 (674 SE2d 898) (2009) (holding that declaratory judgment action was proper when rights had not already accrued and appellant wanted to know whether tax law applied to appellee, such that appellant would have the right to audit appellee's books and records), *and Dep't of Human Res. v. Citibank F.S.B.*, 243 Ga. App. 433, 439 (2) (534 SE2d 422) (2000) (physical precedent only) (holding that declaratory judgment action was proper when appellant wanted to know its obligations under a contract *prior* to acting), *and Mitchell Motors, Inc. v. Barnett*, 249 Ga. App. 639, 642-43 (2) (549 SE2d 445) (2001) (holding that declaratory judgment action was proper to guide and protect appellee from uncertainty and insecurity with regard to his future use of a vehicle in his possession but for which appellant still held title).

[16] *Milton Frank Allen Publ'ns*, 219 Ga. at 671 (1) (a) (punctuation omitted).

[17] *See supra* notes 5-7 & accompanying text.

[18] *See Ransom v. Holman*, 305 Ga. App. 533, 535 (699 SE2d 849) (2010) ("In this matter, the trial court's order did not specify whether [the appellant's] second action was dismissed with or without prejudice, and therefore the dismissal was with prejudice by operation of statute."); *see also* OCGA § 9-11-41 (b) ("The effect of dismissals shall be as follows: (1) A dismissal for failure of the plaintiff to prosecute does not operate as an adjudication upon the merits; and (2) Any other dismissal under this subsection and any dismissal not provided for in this Code section, other than a dismissal for lack of jurisdiction or for improper venue or for lack of an indispensable party, does operate as an adjudication upon the merits unless the court in its order for dismissal specifies otherwise.").

[19] *See Thomas v. Atlanta Cas. Co.*, 253 Ga. App. 199, 202 (1) (558 SE2d 432) (2001) (physical precedent only) ("When a purported declaratory judgment action does not meet the criteria for a declaratory judgment, the trial court must dismiss the action without prejudice for lack of subject matter jurisdiction . . . ."); *Empire Fire & Marine Ins. Co.*, 234 Ga. App. at 673 (2) ("An involuntary dismissal for lack of subject matter jurisdiction does not operate as an adjudication on the merits. Accordingly, dismissals of declaratory judgment actions for want

Accordingly, dismissal must be without prejudice.[20]

2. Pinnacle next contends that the trial court erred by dismissing the derivative action due to Pinnacle's failure to make a formal demand upon CPB to bring the suit itself. We disagree.

Pinnacle argues that (1) the futility doctrine should apply to the statutory demand requirement, (2) Pinnacle should be deemed as having cured any defect or having actually satisfied this procedural requirement, and (3) the claims raised by Pinnacle included direct claims it was entitled to raise in its own name.

(a) *Satisfaction of the Demand Requirement.* OCGA § 14-11-801 provides that a member of a limited-liability corporation may commence a derivative action if five conditions are met,[21] one of which requires the plaintiff to make written demand on the managers or members with authority to cause the limited-liability company to sue in its own right, and requesting that the managers or members take suitable action.[22] Additionally, "the complaint must set forth with particularity the effort of the plaintiff to secure commencement of the action by the managers or the members who would otherwise have the authority to cause the limited liability company to sue in its own right."[23] But Pinnacle argues that it should have been excused from making such a demand because if it had done so, "it would have to write a letter to Clark Realty, as manager of [CPB], demanding that the company . . . sue Clark Realty for mismanagement." Thus, Pinnacle urges us to adopt a futility-doctrine exception[24] to the demand requirement. We decline to do so.

As previously noted by this Court with regard to the derivative-action provisions related to business corporations, "[e]arlier versions of the Business Corporation Code permitted a shareholder to be excused from the demand requirement if he alleged what efforts he had made to secure initiation of the action by the directors, or why such efforts had not been made."[25] But when our General Assembly revised the Business Corporation Code in 1988, the provision mandating ante litem demand was added.[26] And today, the procedures to bring derivative actions in relation to business corporations,[27] non-

---

of justiciability should be without prejudice." (citations omitted)).

[20] *See* OCGA § 9-11-41 (b).

[21] *See* OCGA § 14-11-801 (1)-(5).

[22] OCGA § 14-11-801 (2).

[23] OCGA § 14-11-802.

[24] *See, e.g., Fox Run Props. v. Murray*, 288 Ga. App. 568, 573 (2) (b) (654 SE2d 676) (2007) ("The law does not require a futile tender or other useless act." (punctuation omitted)).

[25] *Dunn v. Ceccarelli*, 227 Ga. App. 505, 509-10 (1) (b) (489 SE2d 563) (1997) (physical precedent only).

[26] *See id.* at 510.

[27] *See* OCGA § 14-2-742.

profit corporations,[28] and limited-liability companies[29] all contain a similar demand requirement, with no futility exception.[30] Thus, because we find the language of our statute and the intent of the General Assembly clear and unambiguous, we will not judicially create a futility exception out of whole cloth, and we affirm the trial court's dismissal of Pinnacle's derivative action as a result of this procedural defect.[31]

We so hold despite Pinnacle's argument that it "cured" any procedural defect by contemporaneously filing a demand letter with its response to the motion to dismiss. Despite the trial court's nonconsideration of this argument, Pinnacle contends that the trial court should have stayed the proceedings after Pinnacle filed a demand letter on February 16, 2011. But we reject Pinnacle's assertion because the statute explicitly requires that 90 days expire between the time a demand is made and when an action is commenced,[32] and Pinnacle commenced its action by filing a complaint in September 2010. Accordingly, having already filed a complaint that admitted to noncompliance with the demand requirement, Pinnacle

---

[28] *See* OCGA § 14-3-742.

[29] *See* OCGA § 14-11-801.

[30] *See* OCGA § 14-2-742 (1) ("A shareholder may not commence a derivative proceeding until . . . [a] written demand has been made upon the corporation to take suitable action . . . ."); OCGA § 14-3-742 (a) (1) ("No derivative proceeding may be commenced until . . . [a] written demand has been made upon the corporation to take suitable action . . . ."); OCGA § 14-11-801 (2) ("A member may commence a derivative action in the right of the limited liability company to recover a judgment in its favor if . . . [t]he plaintiff has made written demand on those managers or those members with [authority to cause the limited liability company to sue in its own right,] requesting that such managers or such members take suitable action . . . .").

[31] *See Dunn*, 227 Ga. App. at 510 (1) (b) (physical precedent only). *Accord Speetjens v. Malaco Inc.*, 929 S2d 303, 309 (I) (¶ 9) (Miss. 2006) (reviewing similar statute and holding that "Mississippi's written demand statute does not contain an exception for futility, and unless and until the Legislature decides to include one, it does not exist"); *Albers v. Edelson Tech. Partners L.P.*, 31 P3d 821, 829 (F) (1) (b) (¶ 33) (Ariz. 2001) (reviewing similar statute and holding that "[t]empting as it might be to imply a futility exception, we must follow the language of [the statute], which is clear and admits of no exception"); *Allen v. Ferrera*, 540 SE2d 761, 765 (I) (N.C. 2000) (reviewing similar statute and declining to apply futility exception). In declining to adopt a futility exception, we also note that the purpose of the demand requirement and its attendant 90-day waiting period has been aptly explained as providing "an opportunity to correct objectionable actions, without the expense of litigation" and a mechanism that "allows directors and managers to be alerted to and consider the [demanding party's] position." *Speetjens*, 929 S2d at 309 (I) (¶ 10). Additionally, "[e]nforcing the statute according to its terms also serves the salutary function of eliminating the need for courts to evaluate, as this court is asked to do in this case, whether failing to make a demand was excusable." *Albers*, 31 P3d at 829 (F) (1) (b) (¶ 33).

[32] *See* OCGA § 14-11-801 (3) (requiring, before a member commences a derivative action, that "[90] days have expired from the date the demand was made unless the member has earlier been notified that the demand has been rejected by the limited liability company or unless irreparable injury to the limited liability company would result by waiting for the expiration of the 90 day period").

could not cure this procedural defect by later sending a demand letter,[33] and the trial court was not required to stay the proceedings under these circumstances.[34]

Finally, we do not address Pinnacle's argument that pre-complaint letters to Clark should be deemed as having satisfied the demand requirement. Pinnacle first raised this argument in its response to Clark's motion to dismiss, attaching copies of the purported "demand" letters. Clark then urged the trial court to disregard Pinnacle's argument and the attached letters so as not to convert the motion to dismiss into a motion for summary judgment.[35] In the end, this argument was neither addressed nor ruled upon by the trial court, which dismissed the derivative action based solely on its refusal to recognize a futility exception and Pinnacle's failure to satisfy the demand requirement.

As with the declaratory-judgment action discussed in Division 1, the trial court's dismissal of Pinnacle's action was actually due to a lack of subject-matter jurisdiction based upon Pinnacle's failure to meet a procedural prerequisite prior to filing suit.[36] Accordingly,

---

[33] *See* OCGA § 14-11-802 ("In a derivative action, the complaint must set forth with particularity the effort of the plaintiff to secure commencement of the action by the managers or the members who would otherwise have the authority to cause the limited liability company to sue in its own right.").

[34] *See* OCGA § 14-11-803 ("*If* the limited liability company commences an inquiry into the allegations made in the demand or complaint, the court *may* stay any derivative action for such period as the court deems appropriate." (emphasis supplied)).

[35] *See Cox Enters., Inc. v. Nix*, 273 Ga. 152, 153 (538 SE2d 449) (2000) ("If, on motion to dismiss for failure to state a claim, the trial court elects to consider matters outside the pleadings, 'the motion shall be treated as one for summary judgment . . . .' "). We note that the trial court's consideration of this argument would not have transformed the motion to dismiss into a motion for summary judgment because, as explained *supra*, the motion to dismiss was based on a lack of subject-matter jurisdiction. *See Scovill Fasteners, Inc. v. Sure-Snap Corp.*, 207 Ga. App. 539, 539-40 (428 SE2d 435) (1993) ("The trial court considering a motion to dismiss for lack of jurisdiction has discretion to hear oral testimony or to decide the motion on the basis of affidavits and documentary evidence alone pursuant to OCGA § 9-11-43 (b)." (punctuation omitted)); *see also McGregor*, 200 Ga. App. at 324-25 (1) (holding that motion to dismiss for failure to satisfy demand requirement was not convertible to a motion for summary judgment).

[36] *See McGregor*, 200 Ga. App. at 324-25 (1) (explaining that the written demand requirement for a derivative action "has nothing to do with the merits of the . . . claim but only with a procedural prerequisite for asserting such a claim," which is a matter in abatement); *see also Stivali v. Aquiport Aylesbury, Inc.*, 244 Ga. App. 389, 389 (535 SE2d 551) (2000) ("While the trial court purported to grant the defendants' motion for summary judgment, we consider the substance and function of a motion rather than its name . . . . [And] appellants' motion challenged the trial court's subject matter jurisdiction, which is a matter in abatement, and the trial court's order was not a grant of summary judgment, but a dismissal of [the] claim." (citation omitted)). *Cf. Welch v. Ga. Dep't of Trans.*, 276 Ga. App. 664, 665 (624 SE2d 177) (2005) (holding, in context of Georgia Tort Claims Act, that because the plaintiff "did not strictly comply with the statutory provisions for sending ante litem notice, the trial court had no subject matter jurisdiction over the suit" (punctuation omitted)); *Ga. Ports Auth. v. Harris*, 243 Ga. App. 508, 510 (1) (a) (533 SE2d 404) (2000) (in context of Georgia Tort Claims Act, noting that the satisfaction of the *ante litem* notice provision of the statute is "a question of

we—like the trial court—need not and do not address Pinnacle's argument to look beyond the complaint which, on its face, admits to a lack of subject-matter jurisdiction,[37] especially when Pinnacle has not alleged as error the trial court's failure to do so.

Nevertheless, despite holding that the trial court properly dismissed this count, as with Division 1,[38] we must remand to the trial court for the entry of an order specifying that dismissal of this count be without prejudice because dismissal of a lawsuit for lack of jurisdiction requires such.[39]

(b) *Derivative vs. Direct Action*. Pinnacle next argues that even in the absence of a demand, the trial court should have permitted its claim to proceed as a direct action. However, Pinnacle did not make this argument below; and it is well established that "[w]e are limited to considering only those grounds raised and ruled on below by the trial court and may not consider a basis for appeal not presented at the trial level."[40] Accordingly, we cannot consider this argument for the first time on appeal.[41] And to the extent Pinnacle argues that the trial court had a duty to sua sponte consider whether its derivative action was capable of proceeding as a direct action, we find no merit in this argument,[42] especially when the complaint was properly

---

subject matter jurisdiction").

[37] *See generally Ex Parte Safeway Ins. Co. of Ala., Inc.*, 990 S2d 344, 349-51 (Ala. 2008) (providing detailed explanation of motions to dismiss for lack of subject matter jurisdiction based on facial and factual challenges, and explaining that "a Rule 12 (b) (1) motion can allege either a facial challenge, in which the court accepts as true the allegations on the face of the complaint, or a factual challenge, which requires consideration of evidence beyond the face of the complaint").

[38] *See supra* notes 17-18 & accompanying text.

[39] *See McGregor*, 200 Ga. App. at 324-25 (1); *see also* OCGA § 9-11-41 (b) ("The effect of dismissals shall be as follows: (1) A dismissal for failure of the plaintiff to prosecute does not operate as an adjudication upon the merits; and (2) Any other dismissal under this subsection and any dismissal not provided for in this Code section, other than a dismissal for lack of jurisdiction or for improper venue or for lack of an indispensable party, does operate as an adjudication upon the merits unless the court in its order for dismissal specifies otherwise.").

[40] *Cotton States Mut. Ins. Co. v. Stallings*, 235 Ga. App. 212, 213 (a) (508 SE2d 688) (1998) (punctuation omitted); *see also Lowery v. Atlanta Heart Assocs., P. C.*, 266 Ga. App. 402, 404-05 (2) (597 SE2d 494) (2004) ("[W]e do not apply a 'wrong for any reason' rule to reverse incorrect rulings on issues not raised or ruled upon in the trial court.").

[41] *See Anstadt v. Bd. of Regents of Univ. Sys. of Ga.*, 303 Ga. App. 483, 486-87 (1) (693 SE2d 868) (2010) ("[O]ur appellate courts are courts for the correction of errors of law committed in the trial court. Routinely, this Court refuses to review issues not raised in the trial court. To consider the case on a completely different basis from that presented below would be contrary to the line of cases holding, 'He must stand or fall upon the position taken in the trial court.' " (punctuation omitted)).

[42] *See Phoenix Airline Servs., Inc. v. Metro Airlines, Inc.*, 260 Ga. 584, 586-87 (1) (397 SE2d 699) (1990) (trial court erred by not dismissing complaint for *direct* action that should have been brought as a derivative action, and defendant moved to dismiss based on same); *Barnett v. Fullard*, 306 Ga. App. 148, 151-54 (3) (701 SE2d 608) (2010) (trial court properly dismissed *direct* action that could have only been brought as a derivative action); *SW Health & Wellness, L.L.C. v. Work*, 282 Ga. App. 619, 623-27 (2) (639 SE2d 570) (2006) (trial court

dismissed for a lack of subject-matter jurisdiction and not a failure to state a claim upon which relief can be granted.

3. Finally, Pinnacle argues that the trial court should have permitted it to amend its complaint rather than dismissing same. However, no pretrial order appears in the record before us, which left Pinnacle free to amend its complaint until the entry of same.[43] However, once the trial court determined that it lacked subject-matter jurisdiction over Pinnacle's claims (even if the trial court did so under an erroneous theory), the trial court properly dismissed the complaint.[44]

Nevertheless, we note that because we remand to the trial court for the entry of an order specifying that Pinnacle's declaratory-judgment count and derivative-action count have been dismissed without prejudice for lack of subject-matter jurisdiction, Pinnacle would be permitted to recommence its action.[45]

Accordingly, for all the foregoing reasons, we affirm the trial court's dismissal of Pinnacle's complaint but remand for the entry of an order dismissing these counts without prejudice.

*Judgment affirmed and case remanded with direction. Mikell, P. J., and Boggs, J., concur.*

DECIDED MARCH 6, 2012.

*Page, Scrantom, Sprouse, Tucker & Ford, William L. Tucker, Marcus B. Calhoun, Jr., Thomas F. Gristina, April H. Hocutt, Greenberg Traurig, Joe D. Whitley, Stephanie L. Oginsky, Michael J.*

---

properly dismissed *direct* action that could have only been brought as a derivative action); *Walker v. Virtual Packaging*, 229 Ga. App. 124, 129 (5) (493 SE2d 551) (1997) (trial court properly raised issue *sua sponte* as to whether *direct* action should have more properly been pursued as a derivative action but was required to give parties the opportunity to respond to this argument).

[43] *See* OCGA § 9-11-15 (a) ("A party may amend his pleading as a matter of course and without leave of court at any time before the entry of a pretrial order. Thereafter the party may amend his pleading only by leave of court or by written consent of the adverse party. . . ."); *see also Tidikis v. Network for Med. Commc'n*, 274 Ga. App. 807, 813 (5) (619 SE2d 481) (2005) (holding that appellant showed no basis for reversal on claim that trial court should have permitted leave to amend complaint rather than dismissing when there were no allegations that trial court prevented amendment of complaint or refused to allow amendment).

[44] *See, e.g., Norton v. N. Ga. Foods, Inc.*, 211 Ga. App. 684, 687 (440 SE2d 263) (1994) ("The trial court properly dismissed the actions against all defendants for lack of subject matter jurisdiction.").

[45] *See* OCGA § 9-2-61 (c) (providing that actions may be recommenced within the original applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later, when "an action is discontinued or dismissed without prejudice for lack of subject matter jurisdiction"); *see also Bardo v. Liss*, 273 Ga. App. 103, 105 (2) (614 SE2d 101) (2005) (holding that trial court properly dismissed complaint with prejudice and declining to remand for the entry of an order of dismissal without prejudice, which would have permitted the plaintiff to recommence suit under the renewal provisions of OCGA § 9-2-61).

*King*, for appellants.

*Buchanan & Land, Jerry A. Buchanan, Lori M. Leonardo*, for appellees.