**FIRST DIVISION
BARNES, P. J.,
BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**March 9, 2023**

# In the Court of Appeals of Georgia

A22A1528. PERDUE et al. v. BARRON et al.

PER CURIAM.

Following the November 2020 general election, former United States Senator David Perdue and Elizabeth Grace Lennon, a Fulton County voter, filed an "election justice" action[1] alleging voting irregularities in Fulton County.[2] Lennon and Perdue primarily asserted that "several batches of absentee ballots were scanned multiple

---

[1] Indeed, the petition states that it "is not an election contest case." See OCGA § 21-2-522 ("A result of a primary or election may be contested on one or more of the following grounds: (1) Misconduct, fraud, or irregularity by any primary or election official or officials sufficient to change or place in doubt the result;. . . [and] (3) When illegal votes have been received or legal votes rejected at the polls sufficient to change or place in doubt the result[.]").

[2] The respondents to Lennon and Perdue's action include then-current members of the Fulton County Board of Commissioners, then-current and former members of the Fulton County Board of Registrations and Elections, and the former Fulton County Elections Director (collectively, "the respondents").

times" and that "'thousands' of unlawful counterfeit absentee ballots were counted and certified" during the election process in violation of the Georgia Constitution. Lennon and Perdue's petition sought: (1) a declaratory judgment "to show there was irreparable harm and injury[;]" (2) apparent equitable relief, in the form of a private forensic inspection of the absentee ballots; and (3) injunctive relief.

Thirteen of the sixteen respondents moved to dismiss the petition, and the Superior Court of Fulton County granted the motions and dismissed the petition against all respondents.[3] Lennon and Perdue appeal, arguing that the trial court erred in granting the respondents' motions to dismiss for failure to state a claim for declaratory relief and for injunctive relief due to mootness. In view of our Supreme Court's recent decision in *Sons of Confederate Veterans v. Henry County Bd. of Commrs.*, 315 Ga. 39 (880 SE2d 168) (2022), we first conclude that Perdue lacks standing to pursue the causes of action in the petition. We further conclude that *Sons of Confederate Veterans* abrogated the trial court's conclusion that Lennon lacked standing, and we hold that she does have standing to pursue a claim; however, we

---

[3] In its order, the trial court cited the petitioners' claim that the three non-moving respondents "actually support Petitioners and the relief they are seeking." Nevertheless, the trial court noted that "[e]ven if true, this changes none of the factual findings and legal analysis buttressing the [c]ourt's conclusion that the remedies Petitioners are pursuing are unavailable to them."

2

also conclude that the trial court lacked subject matter jurisdiction to consider Lennon's request for declaratory relief and, alternatively, agree with the trial court that Lennon's claims lack merit. Therefore, we affirm the trial court's dismissal of the petition.

> Our standard of review is well-settled:

> A motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

(Citation omitted.) *Williams v. DeKalb County*, 308 Ga. 265, 270 (2) (840 SE2d 423) (2020). Although the evidence of record in this case is scant, the petition alleges that Perdue was a candidate for the United States Senate in the November 2020 general election against Jon Ossoff, and that Perdue received 2,462,617 votes (49.73 percent of the votes cast), while Ossoff received 2,374,519 votes (47.95 percent) — a difference of 88,098 votes. As neither candidate received at least 50 percent of the votes cast, the election proceeded to a runoff in which Ossoff defeated Perdue.

3

Almost one year later, Lennon and Perdue filed a petition for declaratory and injunctive relief against the respondents, alleging that "clearly unlawful counterfeit absentee ballots were counted and certified in the General Election" and seeking "an examination and inspection by Petitioners of the Fulton County absentee ballots, absentee ballot return envelopes, the absentee ballot election reports, and other paper, electronic information, and election materials." To that end, Perdue demanded "an inspection and examination of the Fulton County absentee ballots and related documentation and information by Petitioners to determine a true and accurate count of his Senate race in the General Election." Perdue asserted that he was "concerned about the legitimacy of future elections" and "concerned with the policies, procedures, practices, and customs of . . . all Respondents during the General Election and going forward in future elections." In support of his claim, Perdue submitted a poll worker's affidavit in which the worker alleged that "a large number of the absentee ballots which she personally handled and observed had never been folded and placed inside an envelope and were completed by a printer rather than a human."

In addition, Lennon alleged that she was denied the right to vote because "when she attempted to vote in-person [she] was informed by Fulton County Board of Election personnel that she had previously voted by an absentee mail-in ballot,

4

which she did not." Poll workers required Lennon to execute an affidavit "that she did not request an absentee ballot;" Lennon signed the affidavit and completed a provisional ballot. In the petition, Lennon stated that she was "concerned that her in-person vote she submitted via the provisional ballot was not counted . . ., and if it was counted, she is concerned that the votes cast on the fraudulent absentee ballot . . . were counted and that those votes cancelled out her votes." She also expressed concern that "Fulton County will permit fraudulent persons to fraudulently vote in future elections" in which she intends to vote. In short, Lennon and Perdue's apparent goal is to secure for themselves the unilateral and unfettered right[4] "to inspect Fulton County's absentee ballots tabulated in the November 2020 election to determine whether any of the ballots were improper, invalid, void or incorrectly tabulated, and if so, declaratory and injunctive relief to remedy [the respondents'] violation of the Georgia Constitution."

The respondents moved to dismiss the petition, arguing that Lennon and Perdue: (1) did not have standing to raise a due process or equal protection claim; (2)

---

[4] Lennon and Perdue's pleadings contained multiple demands for the production of ballots through the discovery process — a proposed remedy that ignores election contest procedures that are available and have been a part of Georgia's legal and political landscape since at least 1933. See, e.g., OCGA § 21-2-520 et seq.

failed to state a claim for declaratory or injunctive relief; (3) attempted to "highjack the clear and exclusive methods by which elections may be challenged and election improprieties may be redressed;" and (4) were barred from raising claims due to official immunity.[5] The trial court distilled the petitioners' myriad allegations into a claim for

> a series of orders that would effectively empower Petitioners' unnamed "forensic experts" to intrude upon the sealed ballot materials of tens of thousands of Fulton County voters, hunt for speculative voter fraud or error, and then determine for themselves what the "actual" vote count should have been in the Election.

After marrying the causes of action presented in the petition with the petitioners' prayer for relief, the trial court identified three general claims: (1) a declaration that the respondents violated the due process and equal protection clauses of the Georgia Constitution; (2) equitable relief, apparently focused on the proposed forensic inspection of the absentee ballots; and (3) injunctive relief, which purportedly sought the preservation of the absentee ballots. The trial court concluded that

---

[5] Although the motions to dismiss "frame the issues in the context of a failure to state a claim upon which relief can be granted[,] . . . [the] claims were in actuality properly dismissed for a lack of subject-matter jurisdiction" as shown herein. *Pinnacle Benning, LLC v. Clark Realty Capital*, 314 Ga. App. 609, 612 (724 SE2d 894) (2012).

6

Petitioners . . . failed to state a claim for declaratory relief. Their demand for injunctive relief is moot. Their remaining requests for equitable relief, absent the declaratory relief they cannot have, are left supported only by sour grapes which make a wine this Court will not serve.

This appeal follows.

1. *Standing*. At the outset, we address one[6] of the threshold questions in this case[7] — whether the petitioners have standing to pursue a cause of action.[8] See, e.g.,

_____

[6] The trial court noted that the respondents "raise several grounds for dismissal, including that Petitioners lack standing, fail to state claims for declaratory and injunctive relief, and failed to seek the proper redress for their election claims. They also raise *issues of immunity* and Petitioners' failure to state a claim against them in their individual capacities. Given the Court's findings below on Petitioners' claims for declaratory relief, it is unnecessary to address each of the grounds raised by the moving Respondents; one is enough to defeat the claims." (Emphasis in original.)

[7] Ordinarily, we would also be required to address the threshold question of whether the petitioners' claims against the respondents are barred by official immunity. See *Cameron v. Lang*, 274 Ga. 122, 124 (1) (549 SE2d 341) (2001) (holding that, because official immunity is an "entitlement not to stand trial" rather than a "mere defense to liability[,]" "our state courts must consider the issue of a government employee's [official] immunity from liability as the threshold issue in a suit against the [employee] in his personal capacity"); see also *Cosby v. Lewis*, 308 Ga. App. 668, 672 (1) (708 SE2d 585) (2011) ("[O]fficial immunity . . . must be addressed as a threshold matter before a lawsuit may proceed."). In fact, the respondents cited official immunity in their answers to the petition, and it was one of the subjects of their respective motions to dismiss. The petitioners also briefed the issue in their response to the motions to dismiss. Despite the discussion of official immunity by the parties, as well as the potential jurisdictional effect caused by the application of the official immunity doctrine, the trial court gave the doctrine only a

However, this case involves *three* separate and distinct threshold questions — official immunity, standing, and a party's entitlement to declaratory relief. See *Pinnacle Benning, LLC v. Clark Realty Capital*, 314 Ga. App. 609, 612, n. 6 (724 SE2d 894) (2012); *Empire Fire & Marine Ins. Co. v. Metro Courier Corp*., 234 Ga. App. 670, 673 (2) (507 SE2d 525) (1998) ("A dismissal of a declaratory judgment action on the ground the petitioner needs no direction from the court as to future action is a *dismissal for want of subject matter jurisdiction*.") (emphasis supplied); see also *Strong v. JWM Holdings, LLC*, 341 Ga. App. 309, 315 (2) (800 SE2d 380) (2017) ("When a trial court is without jurisdiction over a declaratory judgment claim because of a lack of justiciability, the proper disposition is for the trial court to dismiss the claim without prejudice."). For the reasons stated infra, we conclude that Perdue lacks standing and that Lennon is not entitled to declaratory relief. It is therefore unnecessary to engage in the purely academic exercise of whether the petitioners' claims are barred due to yet another threshold issue. As the trial court aptly noted, "one is enough. . . ."

[8] In this regard, the present case mirrors *Favorito v. Wan*, 364 Ga. App. 745 (875 SE2d 892) (2022). In *Favorito*, seven Fulton County voters filed a substantially identical petition "claiming that votes cast by the petitioners during the 2020 general election were diluted by the inclusion of allegedly unlawful ballots in Fulton County." Id. This Court affirmed the dismissal of the voters' petition, concluding that "the petitioners' interest in ensuring that only lawful ballots were counted was a generalized grievance undifferentiated and common to all members of the public that, no matter how sincere, cannot support standing." (Citation and punctuation omitted.) Id. at 748 (1); see also *Wood v. Raffensperger*, 981 F3d 1307 (11th Cir. 2020); *Sons of Confederate Veterans v. Newton County Bd. of Commrs*., 360 Ga. App. 798, 803 (2) (861 SE2d 653) (2021).

Thereafter, our Supreme Court issued its opinion in *Sons of Confederate Veterans*. As a result, our Supreme Court granted a petition for certiorari in *Favorito*,

*In re Haney*, 355 Ga. App. 658, 660 (845 SE2d 380) (2020) ("[S]tanding is a *threshold* issue.") (emphasis in original); see also *Williams*, 308 Ga. at 271 (3) ("the question of standing is a jurisdictional issue"). The trial court addressed standing in passing and determined, based upon the authority available at the time of its order, that both Lennon and Perdue lacked standing.

> Under Georgia law,
>
> only plaintiffs with a cognizable injury can bring a suit in Georgia courts. Unlike federal law, however, that injury need not always be individualized; sometimes it can be a generalized grievance shared by community members, especially other residents, taxpayers, voters, or citizens.

*Sons of Confederate Veterans*, 315 Ga. at 39. To that end, "when a local government owes a legal duty to community stakeholders, the violation of that legal duty constitutes an injury that our case law has recognized as conferring standing to those stakeholders, even if the plaintiff at issue suffered no individualized injury." Id. at 67 (2) (d) (ii).

---

vacated our opinion in that case, and remanded that case to this Court for reconsideration in view of *Sons of Confederate Veterans*. See *Favorito v. Wan*, No. S22C1285, 2002 Ga. LEXIS 329 (Ga. Dec. 20, 2022).

(a) *Perdue*. Against this backdrop, we first conclude that Perdue has not shown standing. The petition does not establish, much less allege, any residency for Perdue that could confer standing as contemplated by *Sons of Confederate Veterans*. Rather, Perdue avers that he has "the needed standing particularized injury" and "standing to request the unsealing of absentee ballots and related documentation and information" because he is "concerned about the legitimacy of future ballots" and "concerned with the policies, procedures, practices, and customs of Fulton County Elections Directors and Fulton County Board of Elections and Registration. . . ." But concern alone does not standing confer. In the absence of any residential status in Fulton County, where the alleged irregularities occurred during the November 2020 general election,

Perdue's stated bases for standing are insufficient.[9] See *Sons of Confederate Veterans*, 315 Ga. at 65 (2) (d) (i).

At this stage, then, Perdue's action is at an end and we need not address any additional arguments concerning the relative merit of his claims.

(b) *Lennon*. In contrast, we conclude that the petition demonstrates that Lennon does have standing. See *Sons of Confederate Veterans*, 315 Ga. at 65 (2) (d) (i) ("By alleging that she is a citizen of Newton County, [the petitioner] has alleged a cognizable injury as a result of Newton County's vote to move a public monument from display, in violation of OCGA § 50-3-1."). Lennon alleged that she is "a resident of Fulton County, Georgia, and was an eligible elector and was registered to vote in the General Election." Her claim rests on an allegation that the respondents

---

[9] At no point in his pleadings in the trial court or briefing in this Court has Perdue supplied any authority on the concept of candidate standing, much less how the concept arises, if it arises, under the Georgia Constitution. See generally *Nelson v. Warner*, 472 FSupp3d. 297, 304-305 (II) (A) (1) (a) (S. D. W. Va. 2020) (describing, in federal action to declare state election practice unconstitutional, concept of candidate standing). In fact, although the petitioners state they are not seeking relief under any federal law, the bulk of the authority they have cited are federal cases. In any event, because the petitioners have not meaningfully briefed this specific issue, we do not consider it here. See generally *Hotze v. Hudspeth*, 16 F4th 1121, 1124 (5th Cir. 2021) (finding, in federal action to enjoin practices in future state election, that petitioners failed to demonstrate direct injury to support standing and failed to meaningfully brief "the separate question of candidate standing").

"permitted a fraudulent person to request an absentee ballot . . . using Lennon's name" in violation of state law and that, as a result, she had to complete a provisional ballot when she appeared to vote in person. As a result, we conclude that Lennon has standing based upon the principles stated in *Sons of Confederate Veterans*. Therefore, we next turn to the trial court's rulings on the additional threshold issues as they pertain to Lennon.

2. *Declaratory Judgment*. Lennon contends that the trial court erred in dismissing her claim for a declaratory judgment based upon the respondents' alleged violations of her due process and equal protection rights under the Georgia Constitution.[10] We disagree.

Under Georgia law, declaratory judgment actions are governed by the Declaratory Judgment Act, which provides:

> [i]n cases of actual controversy, the respective superior courts of this state . . . shall have power, upon petition or other appropriate pleading, to declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could

_____

[10] Although the petitioners devote almost 15 pages of their brief in this Court to extolling the sacred and well-recognized importance of the right to vote, the brief does not include any meaningful discussion of the appropriate legal remedy to address violations of that right — which is the true subject of this appeal.

be prayed; and the declaration shall have the force and effect of a final judgment or decree and be reviewable as such.

OCGA § 9-4-2 (a). To secure a declaratory judgment,

the plaintiff must show facts or circumstances whereby it is in a position of uncertainty or insecurity because of a dispute and of having to take some future action which is properly incident to its alleged right, and which future action without direction from the court might reasonably jeopardize its interest. A declaratory judgment may not be granted in the absence of a justiciable controversy. The object of the declaratory judgment is to permit determination of a controversy before obligations are repudiated or rights are violated.

(Citation, punctuation, and emphasis omitted.) *Oconee Fed. S&L Assn. v. Brown*, 351 Ga. App. 561, 566 (2) (a) (831 SE2d 222) (2019); see also *Effingham County Bd. of Commrs. v. Effingham County Industrial Dev. Auth*., 286 Ga. App. 748, 749 (650 SE2d 274) (2007). To warrant a declaratory judgment, "the relief sought by a plaintiff must have some *immediate legal effect on the parties' conduct*, rather than simply burning off an abstract fog of uncertainty." (Emphasis supplied.) *City of Atlanta v. Atlanta Independent School System*, 307 Ga. 877, 880 (838 SE2d 834) (2020). "Thus, when a party seeking declaratory judgment does not show it is in a position of uncertainty as to an alleged right, dismissal of the declaratory judgment action is

proper." (Citation and punctuation omitted.) *Collins v. Athens Orthopedic Clinic*, 356 Ga. App. 776, 781 (4) (849 SE2d 213) (2020). And as we have noted, the justiciability of a declaratory judgment action presents a threshold question. See *Strong v. JWM Holdings, LLC*, 341 Ga. App. 309, 315 (2) (800 SE2d 380) (2017) ("When a trial court is without jurisdiction over a declaratory judgment claim because of a lack of justiciability, the proper disposition is for the trial court to dismiss the claim without prejudice."); *Pinnacle Benning, LLC v. Clark Realty Capital*, 314 Ga. App. 609, 612, n. 6 (724 SE2d 894) (2012); *Empire Fire & Marine Ins. Co. v. Metro Courier Corp.*, 234 Ga. App. 670, 673 (2) (507 SE2d 525) (1998) ("A dismissal of a declaratory judgment action on the ground the petitioner needs no direction from the court as to future action is a *dismissal for want of subject matter jurisdiction*.") (emphasis supplied).

We find no error. In this case, Lennon's prayer for relief requested a judgment declaring that the respondents violated the due process and equal protection clauses of the Georgia Constitution. The trial court concluded that the petition asked it

> to make a declaration about something that, if it happened, already happened — i.e., a violation of [her] constitutional rights occasioned by Respondents' alleged mismanagement of the Election. Even assuming that [Lennon] could prove every allegation [she has] made about the

14

Election . . . and that these allegations resulted in corresponding violations of [her] rights, this Court cannot issue a declaration about things that have already occurred.[11]

As our appellate courts have noted many times, the goal of a declaratory judgment action "is to permit one who is walking in the dark to ascertain where he is and where he is going, to turn on the light *before* he steps rather than after he has stepped in a hole." (Citation and punctuation omitted; emphasis in original.) *Collins*, 356 Ga. App. at 781 (4). If a declaratory judgment action "presents only a question of academic interest and not a justiciable controversy, the entry of declaratory judgment is not appropriate, because a court has no province to give advisory opinions." (Citation and punctuation omitted.) *Effingham County Bd. of Commrs.*, 286 Ga. App. at 750.

Here, Lennon's request for declaratory judgment fails because, in part, the actions about which she claims uncertainty have already occurred. Nor would any ruling on the petition "have some immediate legal effect on the parties' conduct[.]" *City of Atlanta*, 307 Ga. at 880. As the trial court correctly noted, Lennon would not

---

[11] The petitioners further illustrate this point, writing that "[d]eclaratory judgment is a proper remedy to address the future actions probable to occur because the unconstitutional violations *have occurred*." (Emphasis supplied.)

be entitled to a declaratory judgment "[e]ven assuming that [she] could prove every allegation [she has] made about the Election . . . and that these allegations resulted in corresponding violations of [her] rights[.]" For these reasons, the relief Lennon seeks is not available through a declaratory judgment action.[12] Accordingly, the trial court correctly dismissed Lennon's petition seeking declaratory judgment.

3. *Injunctive Relief.* Next, Lennon contends that the trial court erred in dismissing her generic claim for injunctive relief as moot. We find no reversible error.

In her petition, Lennon sought an injunction from the trial court to

ensure, by an appropriate [o]rder, the safe-keeping and non-spoliation of all original absentee ballots, absentee envelopes and all other related election information from the November 2020 election until such time that Petitioners may cause to be conducted a forensic inspection by qualified independent document examiners and experts who shall determine which absentee ballots are original and which are counterfeit, if any.

_____

[12] To the extent Lennon relies on *Fourth St. Baptist Church of Columbus v. Bd. of Registrars*, 253 Ga. 368 (320 SE2d 543) (1984), for a different result, her reliance is misplaced. In that case, our Supreme Court affirmed the trial court's dismissal of the petitioner's declaratory judgment action after the Columbus Board of Registrars rejected the church's request to serve as a voter registration site, noting that declaratory judgment was inappropriate under the circumstances.

16

In furtherance of her petition, Lennon filed a "Motion to Preserve Documents and Records" in which she asked the trial court to enter an order preserving documents, records, and evidence described in OCGA § 21-2-500 (a)[13] from the November 2020 general election. Thereafter, the trial court entered an order granting the motion and concluding "that the records and information described by OCGA § 21-2-500 (a) are [to be] maintained by the Clerk of Court *indefinitely* until further order of this Court."

---

[13] "Immediately upon completing the returns required by this article, in the case of elections other than municipal elections, the superintendent shall deliver in sealed containers to the clerk of the superior court or, if designated by the clerk of the superior court, to the county records manager or other office or officer under the jurisdiction of a county governing authority which maintains or is responsible for records, as provided in Code Section 50-18-99, the used and void ballots and the stubs of all ballots used; one copy of the oaths of poll officers; and one copy of each numbered list of voters, tally paper, voting machine paper proof sheet, and return sheet involved in the primary or election. In addition, the superintendent shall deliver copies of the voting machine ballot labels, computer chips containing ballot tabulation programs, copies of computer records of ballot design, and similar items or an electronic record of the program by which votes are to be recorded or tabulated, which is captured prior to the election, and which is stored on some alternative medium such as a CD-ROM or floppy disk simultaneously with the programming of the PROM or other memory storage device. The clerk, county records manager, or the office or officer designated by the clerk shall hold such ballots and other documents under seal, unless otherwise directed by the superior court, for at least 24 months, after which time they shall be presented to the grand jury for inspection at its next meeting. Such ballots and other documents shall be preserved in the office of the clerk, county records manager, or officer designated by the clerk until the adjournment of such grand jury, and then they may be destroyed, unless otherwise provided by order of the superior court."

17

(Emphasis in original.) As a result, the trial court ordered "that the Clerk of the Superior Court of Fulton County shall, until further order of this Court, preserve all materials presently in her custody and control pursuant to OCGA § 21-2-500 (a) regarding the 3 November 2020 General / Special Election in Fulton County." In its later order granting the respondents' motion to dismiss, the trial court held that the petitioners' claim for injunctive relief was moot in view of its order "preserving the electoral records Petitioners seek to preserve (and ultimately unseal and inspect)."

Regardless of the nomenclature used in the trial court's order dismissing Lennon's claim for injunctive relief, we agree that dismissal of the claim as stated was proper. In the most basic terms, Lennon obtained the relief she sought in her initial claim for injunctive relief through other means — specifically, the trial court granted her "Motion to Preserve Documents and Records" and ordered the Clerk of the Superior Court of Fulton County to preserve indefinitely the election records described in OCGA § 21-2-500 (a)[14] — and no one has challenged the trial court's

___

[14] The trial court was authorized to impose such a burden under the plain language of OCGA § 21-2-500 (a) ("The clerk . . . shall hold such ballots and other documents under seal, *unless otherwise directed by the superior court*, for at least 24 months, after which time they shall be presented to the grand jury for inspection at its next meeting. Such ballots and other documents shall be preserved in the office of the clerk . . . until the adjournment of such grand jury, and then they may be destroyed, *unless otherwise provided by order of the superior court*.") (emphasis

18

order on this point. Stated differently, Lennon received her relief in law rather than in equity. See generally *Lue v. Eady*, 297 Ga. 321, 333 (3) (d) (773 SE2d 679) (2015) ("an injunctive remedy does not lie where one has a complete remedy at law"); see also OCGA § 21-2-500 (a); *Burton v. Glynn County*, 297 Ga. 544, 550 (4) (776 SE2d 179) (2015) (holding that injunction does not lie "merely because it directs a party to comply with the law[;]" by contrast, an injunction would impose "an affirmative duty on the party enjoined to either perform – or refrain from performing – a specific act").[15] It follows that the trial court correctly dismissed Lennon's request for an

supplied).

[15] It is true that, "upon dismissal of [a] case, all prior orders that were entered in the case are superseded and can no longer be enforced against *the parties*." (Emphasis supplied.) *Lewis v. City of Savannah*, 336 Ga. App. 126, 129 (1) (784 SE2d 1) (2016). However, "[i]t is axiomatic that a court has the authority to interpret and clarify its own order." (Citation and punctuation omitted.) *Burton*, 297 Ga. at 550 (4). In its order granting the respondents' motion to dismiss, the trial court noted that its prior April 7, 2022 order was "something of a backstop to the *Clerk of Court's* statutory obligation to maintain the relevant records through at least November 2022. OCGA § 21-2-500 (a)." (Emphasis supplied.) No one has challenged the trial court's order on this point. Therefore, in OCGA § 21-2-500 (a), the General Assembly imposed an independent legal obligation on the *Clerk of Court* to preserve the election records, and further provided that the clerk's obligation may be modified by the superior court through its orders. See OCGA § 21-2-500 (a) ("the clerk shall hold such ballots and other documents under seal, *unless otherwise directed by the superior court*, for at least 24 months") (emphasis supplied). In this instance, then, the *Clerk of Court's* independent legal duty, as modified by the trial court, survived the trial court's order dismissing *Lennon's* petition for injunctive relief.

19

injunction. See generally *Medlin v. Mickle*, 240 Ga. 552 (2) (242 SE2d 38) (1978) ("Where the trial court is right for any reason, its judgment will be affirmed.") (citation omitted).

4. *Equitable Relief*. Finally, to award the relief sought in the petition, the trial court found that it would have to determine that the petitioners' "rights were violated, a backwards-looking declaration that no trial court may make." In addition, the trial court concluded that the petitioners had legal remedies to address the alleged election improprieties, including an election contest pursuant to OCGA § 21-2-522, the existence of which precluded any form of equitable relief. Lennon does not enumerate the trial court's conclusions on equitable relief as error, and therefore, there is nothing for us to review. See *Felix v. State*, 271 Ga. 534, 539 (523 SE2d 1) (1999) ("The appellate court is precluded from reviewing the propriety of a lower court's ruling if the ruling is not contained in the enumeration of errors."); Court of Appeals Rule 25 (a) (4) ("The enumeration of errors . . . must identify separately and concisely each allegedly erroneous ruling the appellant relies on as a basis for reversal of the judgment on appeal. See OCGA § 5-6-40.").

In sum, we conclude that Perdue lacks standing pursuant to *Sons of Confederate Veterans*. Although we conclude that Lennon, as a Fulton County

resident, does have standing, we further conclude that the trial court lacked subject matter jurisdiction to consider her claim for declaratory judgment and that her remaining claims are subject to dismissal or have been abandoned.[16] Therefore, we affirm the trial court's judgment dismissing the petition.[17]

*Judgment affirmed. Division Per Curiam. All Judges concur.*

---

[16] We express no opinion on the relative merit of any other cause or causes of action which may be available to Lennon and Perdue. We state only that their claims for declaratory and injunctive relief, as they have been pled in this case, are not available to them.

[17] In view of our discussion in footnote 15, supra, we remind the Clerk of the Superior Court of Fulton County of the obligation to retain any records relevant to this appeal, including the voting records at issue, as required by the trial court's April 7, 2022 order. See OCGA § 21-2-500 (a). As a result, we deny Lennon and Perdue's "Motion of Leave of Court to File Supplemental Brief to Restore the Preservation of Documents and Records."