31 P.3d 821

Walter F. ALBERS, an Arizona citizen on behalf of himself and all other similarly situated, or in the alternative, derivatively on behalf of Albers Air Conditioning Corporation, an Arizona corporation; Albers Technologies Corporation, an Arizona corporation; Mary Grace Warner–Dunlop, M.D., an Arizona citizen; Anne Dorothy Dunlop, a Michigan citizen; David Clearence and Tamlin Allbritten Dunlop, both Arizona citizens; Dorothy Cummins Dunlop, a Michigan citizen; Kevin G. Gee, an Arizona citizen; Dr. and Mrs. Joseph Jacob, both Michigan citizens; F. McBraida Executive Pension Scheme, a citizen of the United Kingdom; Michael Peter and Mrs. Kathleen Madeline McBraida, both citizens of the United Kingdom; Andrew Mongar, a citizen of the United Kingdom; Patricia A. Pitts, an Arizona citizen; Margaret Cummins Warner, a Michigan citizen; All Plaintiffs, on behalf of themselves and All Other Similarly Situated, Plaintiffs–Appellants,

v.

EDELSON TECHNOLOGY PARTNERS L.P., a Delaware Limited Partnership including General Partner; John E. Fox, a New Jersey citizen; BG, PLC, a British corporation; and Richard Rudman, a citizen of the United Kingdom, Defendants–Appellees.

No. 1 CA–CV 00–0406.

Court of Appeals of Arizona, Division 1, Department C.

Sept. 4, 2001.

48

Frederick C. Berry, Jr., P.C., by Frederick C. Berry, Jr., Phoenix, AZ, and Shughart Thomson & Kilroy, P.C., by P. John Brady and James C. Sullivan, and Richard M. Paul, III, Kansas City, MO, Attorneys for Plaintiffs–Appellants.

Snell & Wilmer, L.L.P., by Joel P. Hoxie and Patricia Lee Refo and Andrew F. Halaby, Phoenix, AZ, Attorneys for Defendants–Appellees.

## OPINION

BERCH, Judge.

¶ 1 The trial court dismissed Appellants' five-count complaint on the grounds that they did not follow the applicable procedures for filing a derivative action and did not state claims for individual relief. We affirm the dismissal of count four, but reverse as to all or parts of the remaining counts.

## BACKGROUND

¶ 2 Appellant Albers Air Conditioning Corporation ("AACC") is an Arizona corporation that specializes in air conditioning technology. One of AACC's shareholders, Appellant Albers Technology Corporation ("ATC"), owns patents on air conditioning technology, which it has licensed exclusively to AACC. The remaining Appellants are individual AACC shareholders. Together, the Appellants own 42 percent of AACC's stock.

¶ 3 In 1991, Edelson Technology Partners L.P. ("Edelson") invested $500,000 in AACC

under a written stock purchase agreement. Later, it committed more funds to AACC. Edelson now holds approximately 29 percent of AACC's stock. John E. Fox, one of Edelson's partners, represents Edelson on the AACC board of directors and also holds stock individually.

¶4 BG plc, a Defendant below, invested $2.5 million in AACC and owns roughly 24 percent of AACC's stock. Richard Rudman, a BG employee, represents BG on AACC's board. The holder of the remaining 5 percent interest is Bromine & Chemicals, Ltd., which has never been a party to this litigation.

¶5 Appellants directly sued Edelson, Fox, BG, and Rudman ("Defendants"). Walter F. Albers also sued Defendants derivatively on behalf of AACC. Counts one through three of the complaint allege that Defendants breached fiduciary duties, made material misrepresentations, and were negligent or grossly negligent in dealing with the corporation or its assets. Count four alleges that they failed to exploit ATC's patents. Finally, count five alleges that Edelson and Fox violated the anti-fraud provisions of the Arizona Securities Act. An arbitrator resolved the claims involving BG and Rudman, and those claims are not before us in this appeal, leaving Edelson and Fox as the sole Appellees.

¶6 Edelson and Fox ("Appellees") moved to dismiss the complaint, which Appellants then amended, on the grounds that Appellants failed to state cognizable claims for relief and failed to make the pre-suit demand required by Arizona Revised Statutes ("A.R.S.") § 10–742 (1996). The trial court stayed the action to allow Appellants to make the demand. After receiving the demand, the board declined to take action. Edelson and Fox then successfully renewed their motion to dismiss. The trial court denied Appellants' motion for reconsideration, and this appeal followed.

### DISCUSSION

#### A. Standard of Review

¶7 This court will affirm the dismissal of a complaint for failure to state a claim only if the plaintiff would not be entitled to relief under any set of facts pleaded in the complaint that are susceptible of proof.

*Fidelity Sec. Life Ins. Co. v. State Dep't of Ins.*, 191 Ariz. 222, 224, ¶4, 954 P.2d 580, 582 (1998). In reviewing the complaint, we assume the truth of all facts alleged and construe them in the light most favorable to the Appellants, who were the Plaintiffs below. *Johnson v. McDonald,* 197 Ariz. 155, 157, ¶2, 3 P.3d 1075, 1077 (App.1999). We review *de novo* the trial court's decision interpreting the derivative action notice statute. *See Republic Nat'l Bank of N.Y. v. Pima County,* 200 Ariz. 199, 202, ¶10, 25 P.3d 1, 4 (App. 2001) (regarding interpretation of statutes generally).

#### B. Count Four: Failure to Exploit Patent Rights

¶8 In count four of the complaint, Appellants allege that Edelson and Fox failed to develop and market the patents held by ATC and exclusively licensed to AACC. Although a licensee has an implied duty to exploit patent rights under certain circumstances, *see Permanence Corp. v. Kennametal, Inc.,* 908 F.2d 98, 101–03 (6th Cir.1990), Edelson and Fox were not parties to the license agreement between AACC and ATC. Because the obligation to exploit a patent arises solely from contract law, Edelson and Fox were under no individual duty to exploit the patents ATC licensed to AACC. *See Ferrarell v. Robinson,* 11 Ariz.App. 473, 475, 465 P.2d 610, 612 (App.1970) (directors are not liable for corporate contracts unless they have bound themselves individually); A.R.S. § 10–622(B) (1996) (shareholders are not liable for corporate contracts); *see generally* Ernest Bainbridge Lipscomb III, LIPSCOMB'S WALKER ON PATENTS § 20:1 (3d ed.1987) (noting that the construction of a patent license is generally a matter of state contract law). Therefore, absent interference with the contract or actual fraud, Fox and Edelson are not liable by virtue of their service as "directors and large shareholders" of AACC for failing to encourage or develop ATC's patent.

¶9 Appellants argue on appeal that Edelson and Fox owe a fiduciary duty to ATC to develop the patents because the parties were "co-venturers" in the development and marketing of the patent. Appellants'

complaint, however, does not allege that the parties were *joint*-venturers. Had they done so, although their contract cause of action for failing to develop the patents would still fail, their complaint might have withstood a motion for judgment on the pleadings as to the duty existing between or among joint venturers. *See Janis v. Spelts,* 153 Ariz. 593, 597, 739 P.2d 814, 818 (App.1987) (holding that claim that party breached fiduciary duty when he acted "without his co-venturer's consent ... might have some merit if the parties had become joint venturers"); *see also Rhue v. Dawson,* 173 Ariz. 220, 226 n. 7, 841 P.2d 215, 221 n. 7 (App.1992) (explaining fiduciary duty existing among joint venturers). As to Appellants' allegation that the parties were co-venturers,[1] we note that even interpreted in the light most favorable to the Appellants the complaint fails to allege that the parties were actually co-venturers. The complaint mentions the term only once in passing in the prefatory section. The term does not appear again in the 31–page complaint. In alleging the source of Appellees' duty, Appellants allege that Edelson and Fox owed fiduciary duties as a result of their status as "directors, their ownership position in AACC [that is, as a result of their status as shareholders], their position as venture capitalists, and the closely-held nature of AACC." Complaint at 22, 27. They never allege any duty arising out of the status of co-venturers. Moreover, Appellants do not allege that the parties had a co-venture or joint venture agreement, and no facts are pled to demonstrate that such an agreement exists.

¶ 10 Citing *Donahue v. Rodd Electrotype Co.,* 367 Mass. 578, 328 N.E.2d 505 (1975), Appellants argue that a duty between co-venturers might be implied in a closely held corporation. We need not reach this issue because of our determination, *infra* ¶ 38, that AACC is not closely held.

¶ 11 In light of the foregoing, we hold that the trial court properly dismissed count four of the complaint.

1. For purposes of reviewing the ruling on this motion to dismiss, we liberally construe Appellants' allegation that the parties were "co-venturers" as being synonymous with an allegation that they were *joint* venturers. *See* Ariz. R. Civ. P.

### C. Count Five: Fraudulent Purchase of Securities

¶ 12 Count five alleges that Edelson and Fox violated section 44–1991(A) of the Arizona Securities Act, which provides as follows:

It is a fraudulent practice and unlawful for a person, in connection with a transaction ... involving an offer to sell or buy securities, or a sale or purchase of securities ..., to do any of the following:

1. Employ any device, scheme or artifice to defraud.

2. Make any untrue statement of material fact, or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

3. Engage in any transaction, practice or course of business which operates or would operate as a fraud or deceit.

A.R.S. § 44–1991(A) (Supp.2000).

¶ 13 Appellants allege that Edelson and Fox forced them to sell stock at a price far below market value. They further allege that Edelson and Fox took advantage of them while they were in dire economic straits. Edelson and Fox maintain that this is not fraud, but rather a hard but sound business bargain.

¶ 14 We agree that, standing alone, the allegations of count five do not state a valid securities fraud claim. But Appellants incorporate in count five their previous allegations, including allegations of specific misrepresentations and omissions in paragraphs 86 and 87 of the complaint. We are required to view the complaint as a whole to determine whether a claim for fraud has been stated. *Hall v. Romero,* 141 Ariz. 120, 124, 685 P.2d 757, 761 (App.1984).

¶ 15 Thus, assuming, as we must, the truth of all the facts alleged in the complaint, we can summarize Appellants' fraud and misrepresentation allegations as follows: Edel-

8(f) (requiring courts to liberally construe pleadings so "as to do substantial justice"); *Ritchie v. Grand Canyon Scenic Rides,* 165 Ariz. 460, 462, 799 P.2d 801, 803 (1990).

son and Fox promised AACC funding and assistance that they never intended to provide. They made these misrepresentations intending that AACC would rely on them to its financial detriment, and AACC did so rely. Edelson and Fox further intended to wrest control of AACC from Appellants by reneging on the promises and forcing Appellants to sell shares of AACC at prices far below market value.

¶ 16 These allegations state a valid claim for securities fraud as defined by A.R.S. § 44–1991. Accordingly, we reverse the trial court's dismissal of count five.

### D. Counts One Through Three: Devaluation of Stock, Rendering Stock Options "Meaningless," and Loss of Salary and Employment

#### 1. Individual vs. Corporate Injury

¶ 17 Generally, a stockholder may not bring an action individually for wrongs done to a corporation on the theory that the acts devalued the corporation's stock. *Funk v. Spalding*, 74 Ariz. 219, 223, 246 P.2d 184, 186 (1952). Such an action is derivative rather than direct "if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent the dissipation of its assets." *Id.*

¶ 18 A shareholder may maintain a direct action under certain circumstances, however, such as when (1) the relationship between the shareholders and a wrongdoer is separate from the shareholders' status as shareholders or their ownership interest in the corporation, (2) the wrongdoer owes a duty to the shareholders for some reason other than their status as shareholders, or (3) the injuries or damages were sustained by individual shareholders rather than by the corporation. *Gemstar Ltd. v. Ernst & Young*, 183 Ariz. 148, 157, 901 P.2d 1178, 1187 (App.1995), *vacated on other grounds*, 185 Ariz. 493, 917 P.2d 222 (1996). *See generally* William Meade Fletcher, 13 FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 5939, at 23 (Timothy P. Bjur & James Solheim perm. ed. rev. vol.1995).

¶ 19 Moreover, while corporate officers and directors are generally shielded from liability for acts done in good faith on behalf of the corporation, their status does not shield them from personal liability to those harmed as a result of intentionally harmful or fraudulent conduct. 19 C.J.S. *Corporations* § 537 (1990) ("A corporate officer ... is personally liable for his wrongful deeds, even though he acts in his capacity as a corporate officer."); *id.* § 546(a) ("Directors or officers of a corporation are liable for their fraudulent acts to persons injured thereby."); 18B Am.Jur.2d *Corporations* § 1882 (1985) ("[I]t is clearly established that a director or officer of a corporation is individually liable for fraudulent acts or false representations of his own or in which he participates, even though his action in such respect may be in furtherance of the corporate business."); *accord Bischofshausen, Vasbinder, & Luckie v. D.W. Jaquays Mining & Equip. Contractors Co.*, 145 Ariz. 204, 210–11, 700 P.2d 902, 908–09 (App.1985). "A contrary rule would enable a director or officer of a corporation to perpetrate flagrant injuries and escape liability...." 18B Am. Jur.2d *Corporations* § 1877. The corporate shield should not be used to protect those who employ corporate power to serve their own ends.

¶ 20 We agree with Appellees that most of the allegations in counts one through three state corporate injuries, not individual injuries, and thus must be raised derivatively. Nevertheless, we conclude that Appellants have stated valid claims for individual relief on the following causes of action.

#### 2. Diluted Voting Power

¶ 21 Appellants' allegation that Defendants' wrongful actions "decreased [Appellants'] voting power and control" of the corporation states a cognizable claim for relief that may properly be maintained as a direct action. Claims of decreased voting power have been held to state independent rather than derivative claims for relief. *See In re Tri–Star Pictures, Inc., Litig.*, 634 A.2d 319, 330 (Del.1993). In *Tri–Star*, the plaintiffs alleged that the controlling shareholder took newly issued shares in exchange for

fraudulently inflated property of a far lesser value, thus appreciably reducing the cash-out value of the minority shareholders' interests. This cash value dilution increased the value of the controlling shareholder's interest at the expense of the interests of the minority shareholders. *Id.* The court found that the *Tri–Star Pictures* plaintiffs suffered harm through the corresponding dilution of their voting power. *Id.* at 330–32.

¶ 22 Appellants claim that they suffered a similar proportionate loss of voting power and share value from Fox's and Edelson's allegedly fraudulent purchase of shares at five cents per share. Appellants allege that Edelson interfered with attempts to procure funding through outside sources and made promises it never intended to keep regarding funding. The promises were intended to induce and did induce Appellants to incur further debt, which was to be repaid by the purchase of Appellants' stock. The forced sale of the stock, they claim, diluted their voting power. Edelson and Fox suffered no corresponding loss and indeed increased their voting power vis-à-vis Appellants as a result of the alleged fraud. This dilution of voting power as a result of fraudulent activity states a cause of action.

### 3. *Loss of Value of Stock Options*

¶ 23 The claim of those Appellants who were company employees that they hold stock options that have been rendered "meaningless" by Appellees' fraudulent actions states a valid individual claim for relief although, like the foregoing claim, it is subject to proof at trial. Appellees assert that because stock options are interests in the corporate assets, any claim based upon injuries to these assets derives solely from injury to the corporation. There is a split of authority, however, whether the holder of a stock option, a convertible security, even has standing to bring a derivative suit. *See 2 American Law Institute,* PRINCIPLES OF CORPORATE GOVERNANCE § 7.02 at cmt. c and n. 2 (1994) (only holders of equity securities have standing to bring derivative actions); *see also Harff v. Kerkorian,* 324 A.2d 215, 219 (Del.Ch.1974), *rev'd on other grounds,* 347 A.2d 133 (Del.1975). And that the holder of a stock option might have a right to bring a derivative action does not necessarily preclude the holder from bringing an action directly. *See Kusner v. First Pa. Corp.,* 531 F.2d 1234, 1237 (3d Cir.1976). Certainly where, as here, the Plaintiffs allege that their stock options were rendered meaningless by fraudulent activity, they may maintain that action directly.

¶ 24 Moreover, Appellants' claim is not, as Edelson and Fox argue, simply that the company has lost value and therefore the corporation's stock is worth less per share. Rather they assert that as employees they held lucrative options to purchase stock at a discount, a benefit to which others were not entitled. These options were rendered worthless, they claim, not as a result of negligent management or downturns in the market, but as a result of specific active fraud and breaches of fiduciary duties by Appellees.

¶ 25 The stock option claim describes an injury specific to Appellants based not on their status as shareholders, but upon their status as former employees, which gave them options that others did not enjoy to purchase additional, low-cost shares of corporate stock. Therefore, their claim is not derivative, even though at first blush it appears to be based on damage to the corporation as a whole. *See Schroeder v. Hudgins,* 142 Ariz. 395, 398, 690 P.2d 114, 117 (App.1984) (holding that one who has relations with the corporation "independent of those which the shareholder derives through his interest in the corporate assets and business" has a personal right of action). Appellants' claims arising from their status as former employees are not derivative and may be asserted as individual claims.

### 4. *Loss of Salary*

¶ 26 Appellants' allegation that Appellees' breaches of their fiduciary duties rendered the corporation insolvent, which in turn caused "several of the plaintiffs to work without compensation," also states an individual claim for relief. The complaint states that Edelson's and Fox's fraudulent actions caused the corporation to breach employment contracts with these individuals. This cause of action, like the two immediately above, therefore alleges a breach that is separate from and independent of Appellants'

**54**

ownership of stock in the corporation. Consequently, it is not derivative. *See Shenberg v. DeGarmo,* 61 Cal.App.2d 326, 143 P.2d 74, 77 (1943). To the extent that Appellants' claims rest upon these individual injuries, we reverse the trial court's dismissal of the claim.

### 5. *Loss of Employment*

¶ 27 Appellants claim—separate from their loss-of-salary claim—that some Plaintiffs lost their jobs altogether because of Appellees' negligence or gross negligence. Although this claim might otherwise be brought as a direct action rather than a derivative action, this court has rejected claims for negligent termination of employment. *See Mack v. McDonnell Douglas Helicopter Co.,* 179 Ariz. 627, 630–31, 880 P.2d 1173, 1176–77 (App.1994). Nor does the Arizona Employment Protection Act provide for such an action. *See* A.R.S. § 23–1501(3) (Supp.2000). Accordingly, Appellants cannot state a claim for relief based upon negligent discharge. To the extent that paragraphs 82 and 83 of the complaint suggest that Appellees' acts intentionally ruined the corporation, however, Appellants' claim is direct and not derivative. *See Phillips v. Mont. Educ. Ass'n,* 187 Mont. 419, 610 P.2d 154, 158 (1980) (holding that a corporate officer may be liable for interfering with an employee's contract if he acted for his own benefit rather than for the benefit of the corporation).

¶ 28 Full review of the pleadings demonstrates that the trial court erred in concluding that the Appellants' amended complaint alleged only derivative claims. Taking the allegations in the light most favorable to the Plaintiffs, as we are required to do, *see Johnson,* 197 Ariz. at 157, ¶ 2, 3 P.3d at 1077, it is clear that they alleged sufficient individual injury resulting from Defendants' fraudulent dealings with the corporation to state some individual claims. These individual claims survive Defendants' 12(b)(6) motion. Similarly, Appellants' allegations of breach of fiduciary duties and inadequate and misleading disclosures support their decreased voting power and control claims. These causes of action stated individual, not derivative claims for relief. *See Schroeder,* 142 Ariz. at 398, 690 P.2d at 117.

¶ 29 We emphasize the limited nature of our decision. We merely conclude that Appellants' complaint, liberally construed, states some valid direct causes of action. It remains to be seen on remand if Appellants can prove those claims. We so hold even with the understanding that injuries resulting from simple mismanagement or poor decision-making by Edelson or Fox will not justify relief. The business judgment rule "precludes judicial inquiry into actions taken by a director in good faith and in the exercise of honest judgment in the legitimate and lawful furtherance of a corporate purpose." *Shoen v. Shoen,* 167 Ariz. 58, 65, 804 P.2d 787, 794 (App.1990). However, we read in the complaint allegations of misrepresentations and material omissions which, if taken as true, state valid causes of action because they allege the absence of good faith in the exercise of judgment regarding corporate business, actions that furthered Defendants' rather than the corporation's interests, at Appellants' expense.

### E. *Appellants Failed to Satisfy the Requirements for their Remaining Derivative Claims*

¶ 30 Appellants' derivative claims in counts one through three must be dismissed unless Appellants satisfied the requirements for a derivative action or the claims fall within a recognized exception to derivative action requirements. We conclude that Appellants have not satisfied the derivative action requirements and their claims do not fall within any recognized exception to those requirements.

### F. *Applicability of Derivative Action Notice Statute*

#### 1. *Mandatory Nature of A.R.S. § 10–742*

¶ 31 In Arizona, no shareholder may commence a derivative proceeding until the following two requirements are met:

a. A written demand has been made on the corporation to take suitable action.

b. Ninety days have expired from the date the demand was made unless the shareholder has earlier been notified that the demand has been rejected by

the corporation or unless the statute of limitations will expire within the ninety days or unless irreparable injury to the corporation would result by waiting for the expiration of the ninety day period.

A.R.S. § 10–742 (1996).

¶ 32 Appellants did not make such a demand before filing suit. They argue that we should imply a futility exception to the statute because the board was deadlocked and the demand therefore was likely to be denied. Alternatively, they argue that they should be excused from making pre-suit demand because the statute of limitations was about to expire. We reject both arguments.

¶ 33 Tempting as it might be to imply a futility exception, we must follow the language of A.R.S. § 10–742, which is clear and admits of no exception. It requires a pre-suit demand. *Janson v. Christensen,* 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991) ("[T]he best and most reliable index of a statute's meaning is its language and, when the language is clear and unequivocal, it is determinative of the statute's construction."). Enforcing the statute according to its terms also serves the salutary function of eliminating the need for courts to evaluate, as this court is asked to do in this case, whether failing to make a demand was excusable. *See In re PSE & G Shareholder Litig.,* 315 N.J.Super. 323, 718 A.2d 254, 260 (1998) (noting that a universal demand requirement is advisable because it eliminates the need for courts to inquire whether demand is necessary or excused). Appellants failed to comply with the statute's mandatory and unambiguous terms, and the trial court's dismissal of Appellants' derivative claims was correct.

¶ 34 Moreover, Appellants faced no statute of limitations problem when they filed their original complaint. Section 10–742 shortens the ninety-day waiting period if the statute of limitations will expire within the ninety days. Thus, if the statute of limitations had been near expiration, Appellants would have been allowed to file suit sooner than ninety days after making their demand. Appellants were not excused from making a pre-suit demand.

### 2. This Case does not Qualify for a Close Corporation Exception

¶ 35 Appellants contend that AACC is a closely held corporation and therefore they are excused from filing notice of their derivative claim. To support their claim that a close corporation exemption exists, they point to *Johnson v. Gilbert,* 127 Ariz. 410, 621 P.2d 916 (App.1980). It is not clear, however, whether *Johnson* fairly stands for the proposition that one need not comply with A.R.S. § 10–742 before bringing a derivative suit. Because *Johnson* was decided before A.R.S. § 10–742 was enacted, neither party raised and the court did not decide the notice issue. The court decided only that the action did not need to be brought as a derivative action because Johnson and Gilbert and their spouses were the only shareholders of the corporation. We agree that the derivative-direct distinction makes little sense when the only interested parties are the two shareholders who control the corporation and their spouses. At most, *Johnson* stands for the proposition that under a limited set of circumstances, before the notice statute was enacted, a shareholder might proceed directly even on seemingly derivative claims. Those circumstances are not present here.

¶ 36 In *Johnson,* a contractor and a real property owner formed a corporation to develop property. *Id.* at 411, 621 P.2d at 917. Eventually, a disagreement arose and a lawsuit was filed. *Id.* This court concluded that "[b]ecause the corporation was closely held by only the plaintiffs and defendants, they operated more as partners than in strict compliance with the corporate form." *Id.* at 412, 621 P.2d at 918. Accordingly, the court concluded, the plaintiffs had standing to sue both derivatively and directly.

¶ 37 This case differs in important respects from *Johnson. Johnson* involved a business operated as a two-person joint venture to develop property. The plaintiff and defendant had a long-standing working relationship before the litigation commenced. Even under the broadest reading of the complaint in the pending matter, AACC does not operate as a partnership or a joint venture. Multinational corporations and large venture capital partnerships own 58 percent of

AACC's stock. The caption of the complaint and its allegations regarding the parties demonstrate that AACC's shareholders are located throughout the world, including Britain and Saudi Arabia, as well as various points across the United States. The partners in shareholder Edelson Technology Partners include some of the largest corporations in the world. It seems unlikely that the parties all know one another or that they work closely together.[2] Moreover, there is no allegation that the owners of AACC disregarded the corporate form in any respect. In sum, the circumstances that supported the ruling in *Johnson* do not exist here.

¶ 38 Finally, we note that, despite Appellants' allegation to the contrary, AACC does not appear to be a close corporation. Arizona has not statutorily defined a close corporation. *See* A.R.S. §§ 10–1801 to –1818 (1996). But at common law, the attributes of a close corporation are that (1) the shareholders are few in number, often two or three; (2) the shareholders usually live in the same geographical area, know each other, and are well acquainted with each others' skills as they relate to the corporation; (3) all or most of the shareholders are active in the business, usually serving as directors or officers or as management; and (4) there is not an established market for the corporate stock. *Landstrom v. Shaver,* 561 N.W.2d 1, 1 n. 15 (S.D.1997); *accord Harrison v. Netcentric Corp.,* 433 Mass. 465, 744 N.E.2d 622, 627 n. 6 (2001); *Melrose v. Capitol City Motor Lodge, Inc.,* 705 N.E.2d 985, 990 (Ind.1998). *See generally 1 American Law Institute,* PRINCIPLES OF CORPORATE GOVERNANCE § 1.06 (1994). In this case, the complaint itself shows that AACC is not a close corporation. As noted above, there are many shareholders, some of which are themselves multinational corporations. Not all shareholders are acquainted with or active in the business, and they are not geographically clustered. Thus, because AACC does not qualify as a closely held corporation, we need not consider extending

the derivative action claim exception to this case.

## CONCLUSION

¶ 39 We reverse the trial court's dismissal of counts one, two, and three of the complaint to the extent that they rely upon individual injuries to Appellants' voting power, stock options, salary, and employment contracts. We reverse the trial court's dismissal of count five and affirm the dismissal of count four. We remand the case for further proceedings consistent with this decision.

CONCURRING: JEFFERSON L. LANKFORD and RUDOLPH J. GERBER, Judges.

---

**2.** Additionally, not all of AACC's shareholders are involved in this lawsuit. Bromine & Chemicals Ltd., a 5 percent shareholder, is not and has never been a party to this action. Thus two values of derivative suits—precluding multiple lawsuits and allowing all shareholders to have

notice of and participate in one lawsuit—are lost. Indeed, we are not able to ascertain from the record whether all shareholders even have knowledge of the suit, much less are we able to assess whether their interests are represented.