332 P.3d 86

**ROSE GOODYEAR PROPERTIES, LLC, an Arizona limited liability company, Plaintiff/Appellant,**

v.

**NBA ENTERPRISES LIMITED PARTNERSHIP, an Arizona limited partnership; King Cotton, Inc., an Arizona corporation; Hohokam Acres Limited Partnership, an Arizona limited partnership; Hohokam Sun, LLC, an Arizona limited liability company; and Hanba, LLC, an Arizona limited liability company, Defendants/Appellees,**

and

**Abel Commercial Ventures, LLC, an Arizona limited liability company, Nominal Defendant/Appellee.**

No. 1 CA–CV 12–0484.

Court of Appeals of Arizona, Division 1.

Aug. 5, 2014.

The Rose Law Group, P.C., By Samuel J. Doncaster, Scottsdale, for Plaintiff/Appellant.

McCabe O'Donnell, P.A., By Joseph I. McCabe, Clifford J. Roth, Phoenix, Counsel for Defendants/Appellees.

Simbro & Stanley, PLC, by Robert P. Simbro, Scottsdale, for Nominal Defendant/Appellee.

Judge RANDALL M. HOWE delivered the opinion of the Court, in which Presiding Judge PETER B. SWANN and Chief Judge DIANE M. JOHNSEN joined.

## OPINION

HOWE, Judge:

¶ 1 This case addresses two issues: first, the capacity of a dissolved limited liability company ("LLC") to sue to collect its assets; second, the requirements that a member of an LLC must satisfy before filing a derivative action on behalf of an LLC. We hold that a dissolved LLC has the capacity to sue to collect its assets as part of its efforts to wind up its business and affairs. We also hold that before a member of an LLC can

file a derivative suit on behalf of the LLC, the member must make an unambiguous demand that the LLC file suit.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 Rose Goodyear Properties ("Rose"), NBA Enterprises, and Hohokam Acres formed an LLC, Abel Commercial Ventures ("Abel"), in 2005. Abel's purpose was to develop certain real property for investment or sale. Rose owned 27.56% of Abel, NBA 36.22%, and Hohokam 36.22%. The members appointed Civica Development, LLC as Abel's manager.

¶ 3 Abel borrowed $2,000,000 secured by a deed of trust on real property and lent the funds to Hohokam and NBA, Abel's majority members. After Abel defaulted on the loan, the property securing the debt was sold at a trustee's sale for $1,050,000. Abel was then sued for the $1,055,445.64 deficiency.

¶ 4 During this time, Rose and Civica had business management disputes with NBA and Hohokam, and Civica was removed as Abel's manager. Rose demanded that a new manager be appointed, but NBA and Hohokam took no action for several months, until March 2009, when they formed a new LLC, Hanba, and appointed it as Abel's manager.

¶ 5 Rose filed a complaint, later amended, alleging six counts: Count 1, a derivative claim for breach of contract against NBA, Hohokam, and their general partners based on NBA and Hohokam's failure to repay the loans from Abel; Count 2, direct and derivative claims against NBA, Hohokam, their general partners, and Hanba for breaches of fiduciary duty based upon duties owed to Abel and Rose as Abel's minority member; Count 3, a direct claim for breach of contract against NBA, Hohokam, and their general partners for refusing to arbitrate and for breaching their fiduciary duty; Count 4, a direct breach of contract claim against NBA, Hohokam, and their general partners for breach of the implied covenant of good faith and fair dealing; Count 5, a direct tort claim against NBA, Hohokam, and their general partners for breach of the implied covenant of good faith and fair dealing; and Count 6,

direct and derivative claims for declaratory and injunctive relief against NBA, Hohokam, and Hanba to require Abel to hire conflict-free counsel and to reinstate Civica as Abel's manager. Abel was named as a nominal defendant. After filing the complaint, Rose's statutory agent resigned and Rose did not appoint a new statutory agent. Because Rose failed to maintain a statutory agent, the Arizona Corporation Commission dissolved Rose on September 16, 2010.

¶ 6 The defendants moved to dismiss the amended complaint, arguing that all the claims should be dismissed because the complaint was not verified and did not join indispensable parties. They also argued that the derivative claims should be dismissed because Rose had failed to make a demand on Abel's manager to file suit before commencing litigation and had failed to adequately allege Rose's efforts to make Abel file suit. They attached to their motion several exhibits, one of which was a letter dated February 25, 2010, from Rose's counsel about the loan dispute.

¶ 7 Rose opposed the motion, noting that with the exception of the argument regarding joining indispensable parties, the motion to dismiss applied only to the derivative claims and not the direct claims. Rose argued that the complaint did not need to be verified and no indispensable party had been omitted. Regarding the derivative claims, Rose argued that it had made a sufficient demand that Abel's manager sue on behalf of the company and had sufficiently alleged that demand in its complaint.

¶ 8 The superior court granted the motion to dismiss in part. Although the court rejected the defendants' arguments for dismissal of the direct claims, it held that Counts 1, 2, and 6 were derivative claims that failed because Rose had not made a proper demand on Abel's manager to file suit. The court declined to consider the defendants' other arguments against the derivative claims.

¶ 9 The defendants then moved for summary judgment on Counts 3, 4, and 5, arguing, among other things, that Rose lacked the capacity to sue them because it had dissolved and was never properly reinstated.

The superior court granted summary judgment, agreeing that Rose lacked the capacity to sue because it had been dissolved. The superior court specifically declined to consider the defendants' other arguments for summary judgment.

¶ 10 Rose moved for clarification of the superior court's dismissal of Counts 2 and 6, arguing that the court should clarify that the dismissal applied only to the derivative allegations in the counts and not to the allegations constituting direct claims. The defendants responded that although Rose contended that the claims were both direct and derivative, the claims were essentially derivative because the alleged injuries were to Abel. The superior court denied the motion, ruling that "the subject claims [are] derivative in nature."

¶ 11 Rose moved to amend the complaint a second time, arguing that it had made an appropriate demand in a letter dated August 16, 2011. The superior court denied the motion to amend as futile. The court granted judgment in favor of the defendants and awarded them and the nominal defendant attorneys' fees and costs.

## DISCUSSION

¶ 12 Rose argues that the superior court erroneously (1) granted summary judgment on the direct claims because Rose was in good standing with the Arizona Corporation Commission and had the capacity to sue; (2) dismissed the derivative claims; and (3) subjected the direct claims to the derivative demand requirement.

### I. Rose's Capacity to Sue

¶ 13 The superior court granted summary judgment to the defendants on Rose's direct claims (Counts 3, 4, and 5) because it concluded that Rose, as a dissolved LLC, "may not carry on any business except as necessary to wind up and liquidate its business and affairs," and therefore could not file a lawsuit. We review the issue of Rose's capacity to sue de novo. *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 499, 917 P.2d 222, 228 (1996).

¶ 14 Rose argues that it was properly reinstated and is in good standing with the Arizona Corporation Commission, and therefore has capacity to sue. Rose also argues that even if it were not in good standing, it is not prohibited from suing to collect its assets in winding up its business. We need not determine whether Rose is in good standing with the Arizona Corporation Commission because Rose has capacity to sue as a dissolved LLC in the process of winding up.

¶ 15 A dissolved LLC cannot "carry on any business except business that is necessary to wind up and liquidate its business and affairs." A.R.S. § 29–782(B). Business necessary to wind up includes collecting assets, disposing of or distributing property, discharging liabilities, and "all other acts required to liquidate ... business and affairs." *Id.*

¶ 16 In bringing its direct claims against NBA, Hohokam, and their respective general partners, Rose was attempting to collect its assets so that it could liquidate its business. Although § 29–782 does not expressly allow a dissolved LLC to sue, it does allow the LLC to do specified acts and "all other acts required to liquidate its business and affairs." § 29–782(B)(5). Pressing litigation that may result in monetary damages certainly falls within this ambit. *See* A.R.S. § 1–211(B) (statutes should be "liberally construed to effect their objects and promote justice"). This interpretation is consistent with statutes in other states that expressly allow LLCs that are winding up their business to maintain legal actions. *See* Cal. Corp.Code § 17707.06(a) ("A limited liability company that is dissolved nevertheless continues to exist for the purpose of winding up its affairs, prosecuting and defending actions by or against it in order to collect and discharge obligations, . . . ."); 6 Del.Code Ann. § 18–803(b) ("the persons winding up the limited liability company's affairs may, in the name of, and for and on behalf of, the limited liability company, prosecute and defend suits, whether civil, criminal or administrative, . . . .").

¶ 17 Because Rose filed its direct claims in an effort to collect its assets as part of winding up, the superior court erred in holding it

lacked the power to sue. We vacate the superior court's order dismissing Counts 3, 4, and 5, and remand for further proceedings.

## II. Sufficiency of the Demand letter

■ ¶ 18 Rose also appeals the dismissal of its three derivative claims (Counts 1, 2, and 6) for failure to state a claim pursuant to Arizona Rule of Civil Procedure 12(b)(6). Rose argues that the superior court erred in finding that it had not made a proper demand of Abel to sue and did not allege with particularity in the complaint its efforts to make Abel sue.

¶ 19 Rule 12(b) requires a court to treat a motion to dismiss as a motion for summary judgment if "matters outside the pleading are presented to and not excluded by the court." The defendants attached to their motion to dismiss seventeen exhibits, which included the February 25, 2010, letter from Rose's counsel. This letter was "outside the pleadings" because the amended complaint, which had no exhibits, did not refer to this letter. Because the letter was extraneous to the complaint, the court implicitly converted the motion into one for summary judgment. *Canyon del Rio Investors, L.L.C. v. City of Flagstaff*, 227 Ariz. 336, 340 ¶ 15, 258 P.3d 154, 158 (App.2011). Accordingly, we evaluate the dismissal of Counts 1, 2, and 6 under the summary judgment standard.

¶ 20 Summary judgment is warranted when "the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that no reasonable person could find for its proponent." *Cal X-TRa v. W.V.S.V. Holdings, L.L.C.*, 229 Ariz. 377, 393 ¶ 51, 276 P.3d 11, 29 (App.2012). We review the grant of summary judgment de novo. *Tritschler v.*

*Allstate Ins. Co.*, 213 Ariz. 505, 519 ¶ 48, 144 P.3d 519, 533 (App.2006). We also review de novo interpretations of derivative action notice statutes. *Albers v. Edelson Tech. Partners, L.P.*, 201 Ariz. 47, 50 ¶ 7, 31 P.3d 821, 824 (App.2001).

¶ 21 Before a member of an LLC may bring a derivative action, it must make a demand on the manager requesting that "the manager ... cause the limited liability company to sue in its own right." A.R.S. § 29–831(2).[1] Rose argues that it demanded that Abel's manager's file suit, and points to several letters it cited in its first amended complaint. In those letters, however, Rose only demanded that NBA and Hohokam repay the loans to Abel and did not demand that the manager cause Abel to sue in its own right. The letters' statements that "your clients should collect the loans due to Abel," and that the defendants "have a fiduciary duty to collect these loans," were merely complaints that Hanba had not collected the debts owed to Abel. These statements were not unambiguous demands that Hanba now take action to cause Abel to sue in its own right, as § 29–831(2) requires.

■ ¶ 22 Rose argues that its February 25, 2010, letter is clearly a demand letter. But nowhere does Rose demand that Hanba cause Abel to file suit. The letter was in response to a letter from Abel's counsel, and it explained Rose's view that (1) Rose would not withdraw its motion to intervene in the deficiency action that had been filed against Abel; (2) Civica had reinstated its management authority over Abel, so Hanba should step down as manager; (3) Abel's counsel was disqualified from representing Abel because of a conflict of interest; and (4) NBA and Hohokam owed money to Abel. Although

1. No Arizona appellate decision has addressed the requirements of a demand letter in a derivative suit. The most commonly stated formulation for the elements of a demand preceding a shareholder derivative suit is that, "[a]t a minimum, a demand must identify the alleged wrongdoers, describe the factual basis of the wrongful acts and the harm caused to the corporation, and request remedial relief." *Allison on Behalf of General Motors Corp. v. General Motors Corp.*, 604 F.Supp. 1106, 1117 (D.Del.), *aff'd*, 782 F.2d 1026 (3d Cir.1985); *accord, e.g., Bender v. Schwartz*, 172 Md.App. 648, 917 A.2d 142, 154

(2007). Although this formulation is generally instructive, it does not account for the specific requirement in § 29–831(2) that the member of an LLC seeking to file a derivative suit must first make a demand "requesting that the manager ... cause the limited liability company to sue in its own right." This requirement is much more specific than the statutory demand requirement for corporate shareholder derivative actions. *See* A.R.S. § 10–742(1) (A shareholder cannot commence a derivative action until "[a] written demand has been made on the corporation to take suitable action.").

Rose stated in the letter that Hanba had "failed and refused to cause [Abel] to bring an action against NBA and Hohokam to collect the monies due and owing under the NBA and Hohokam loans," it did so while explaining why it was intervening in the deficiency action. The statement is not a demand that Hanba cause Abel to sue.

¶ 23 Rose also argues that even if its various letters did not satisfy the derivative demand requirement, the court should have allowed it to file a second amended complaint to correct any deficiencies in the demand letter. Rose argues that it cured the demand requirement defect in an August 16, 2011, letter, which stated that "pursuant to A.R.S. § 29–831(2), on behalf of [Rose], we demand that Hanba cause [Abel] to sue the Defendants named in the Derivative Action in its own right on all of the Derivative Claims, seeking the relief set forth in the [First Amended Complaint] as to the respective Derivative Claims."

¶ 24 This letter was not written until *after* Rose filed the lawsuit, however, and cannot satisfy the statutory demand requirement. The purpose of a demand letter is to allow an LLC's manager the opportunity to address an alleged wrong to the LLC before an LLC's member takes matters into its own hands. *Cf. Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 533, 104 S.Ct. 831, 78 L.Ed.2d 645 (1984) (The purpose of a demand letter is to allow the directors the opportunity to exercise their reasonable business judgment to pursue or to waive a legal right before a shareholder may sue derivatively.). That is why Arizona law makes a demand letter a prerequisite for a derivative suit. Under § 29–831, a member may bring a derivative suit only if, among other requirements, the member "has made demand" on the manager to cause the LLC to sue in its own right, § 29–831(2), and the manager has "wrongfully refused" to bring suit or has failed to respond to the demand "after adequate time to consider the demand," § 29–831(3). Because these requirements—written in the past tense—exist to give the manager the opportunity to consider the demand letter and to bring a lawsuit in the LLC's own right *before* the member may file a

derivative suit, a letter written after the lawsuit has been filed does not satisfy the statute. *See Pinnacle Benning, LLC v. Clark Realty Capital, LLC*, 314 Ga.App. 609, 724 S.E.2d 894, 901 (2012) (holding that sending a demand letter after the derivative lawsuit had been filed did not satisfy the demand requirement).

¶ 25 The same result occurs here. Rose's letter of August 16, 2011, presented after Rose had already commenced its lawsuit, could not satisfy § 29–831(2)'s demand requirement and did not cure its failure to present a proper demand. The superior court did not err in dismissing the derivative claims in Counts 1, 2, and 6 for Rose's failure to satisfy the demand requirement.

## III. Dismissal of Purported Direct Claim Allegations in Counts 2 and 6

¶ 26 Rose also argues that the court erred in dismissing Counts 2 and 6—claims for breach of fiduciary duty and declaratory and injunctive relief against NBA, Hohokam, and Hanba—to the extent that those claims also alleged direct claims. The defendants counter that dismissal of the claims in their entirety was appropriate because the claims were entirely derivative—based on breaches of duties to Abel—and made no allegation that the defendants were liable to Rose directly.

¶ 27 The superior court did not err in dismissing all of the allegations in Counts 2 and 6. In determining whether Rose's claims are derivative or direct, we apply concepts from the law of corporations. A claim is derivative rather than direct if it alleges injury to the LLC or to its property as a whole, or seeks the recovery of the LLC's assets or the prevention of dissipation of its assets. *See Albers*, 201 Ariz. at 52 ¶ 17, 31 P.3d at 826 (a claim is derivative " 'if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent the dissipation of its assets' ") (quoting *Funk v. Spalding*, 74 Ariz. 219, 223, 246 P.2d 184, 186 (1952)).

¶ 28 The only injury alleged in Count 2 is to Abel. Each of Count 2's allegations relates to Abel's failure to pursue collection of the debts NBA and Hohokam owed to it and the resulting loss of its property in the trustee's sale after NBA and Hohokam's defaults caused the LLC to default on its debt. The basis of Rose's claims, therefore, is injury to Abel and its assets—not to Rose directly—and Rose seeks to recover Abel's lost assets, the property and the repayment of the loans. Rose's sole statement of damages—the loss of the property at the trustee's sale—highlights that Rose's injury is indirect, an injury to Abel that Rose suffers in proportion to its membership in Abel. Count 2 is wholly a derivative claim.

¶ 29 Rose maintains that the injury it suffered is partly direct because NBA, Hohokam, and Hanba owed it a fiduciary duty as a minority member in Abel. But Count 2 does not allege any particular injury apart from the diminution of the value of Rose's interest from Abel's failure to seek repayment of the debts and to adequately contest the loss of the property at the trustee's sale.[2] The superior court did not err in ruling that Count 2 was wholly a derivative claim and properly dismissed it.

¶ 30 The same is true of Count 6, Rose's claim for injunctive and declaratory relief. Rose alleges in Count 6 that NBA, Hohokam, and Hanba injured Abel by hiring counsel for Abel that had conflicts of interest and that NBA and Hohokam improperly removed Civica as Abel's manager and elected Hanba as manager. Rose asked for an in- junction prohibiting Abel's counsel from further representing Abel and a declaration that Civica is Abel's manager. This claim is based not on any direct injury to Rose, but on injury to Abel because it alleges that Abel's counsel has a conflict of interest and its manager was improperly chosen. Moreover, the remedy Rose seeks does not directly benefit Rose, but Abel in the operation of its business. The superior court did not err in ruling that Count 6 was wholly derivative and properly dismissed it with the other derivative claims.

## IV. Attorneys' Fees

¶ 31 Rose argues, without explanation, that we should reverse the superior court's award of attorneys' fees to defendants. Before the superior court, the defendants requested attorneys' fees under A.R.S. §§ 29–833(B), 12– 341, and –341.01. Section 29–833(B) allows awards of attorneys' fees to defendants in a derivative action if the action was brought without reasonable cause. Section 12–341 allows awards of costs to the successful party in a civil action. Section 12–341.01 allows awards of attorneys' fees to the successful party in an action arising out of contract.

¶ 32 Because we remand certain counts to the superior court, no party has yet prevailed. We therefore vacate the award of attorneys' fees, and direct the superior court to reconsider the matter after all issues have been resolved.

## V. Attorneys' Fees on Appeal

¶ 33 Both parties request attorneys' fees on appeal under the operating agreement

---

**2.** We express no opinion about whether any fiduciary relationships may exist between the parties here. In Count 3, Rose alleges breach of fiduciary duty against Hanba as Abel's manager. Abel's operating agreement provides in Article 5.7 that its manager "acknowledges that it is a fiduciary and has the duty to exercise the reasonable business judgment required of a director of a corporation." Article 5.4 provides that the manager "shall not be liable to the Company or the Members" for any act, omission, or judgmental error that the manager made in exercise of its judgment in good faith that "does not constitute fraud or breach of fiduciary duty."

We need not address whether a member of an LLC has a fiduciary duty to another member under the common law in the absence of a statutory duty or duty imposed under an operating agreement. *See TM2008 Investments, Inc. v. Procon Capital Corp.*, 234 Ariz. 421, 424–25 ¶ 15, 323 P.3d 704, 707–08 (App.2014) (acknowledging that the Arizona statutes governing LLCs do not establish a fiduciary relationship between members but holding that members may establish such a relation in the LLC's operating agreement). Several other state courts have held that, in the absence of contrary provisions in a statute or operating agreement, members of an LLC have a common law fiduciary duty to one another. *See, e.g., Purcell v. Southern Hills Investments, LLC*, 847 N.E.2d 991, 996–97 (Ind.App. 2006); *Patmon v. Hobbs*, 280 S.W.3d 589, 594 (Ky.App.2009); *Wasserman Goldsten Family, LLC v. Kay*, 197 Md.App. 586, 14 A.3d 1193, 1210 (2011).

and A.R.S. §§ 29–833(B) and 12–341.01(A). Because neither party has yet prevailed, awarding fees at this time is premature. The superior court may consider fees incurred on appeal in determining fee awards at the conclusion of the case.

## CONCLUSION

¶ 34 We affirm the dismissal of Counts 1, 2, and 6 for Rose's failure to comply with the derivative demand requirement. We vacate the superior court's order dismissing Counts 3, 4, and 5, and remand for further proceedings on those counts. Further, we vacate the award of attorneys' fees for the trial court to reconsider the request upon the resolution of the case.