IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JUDSON C. BALL REVOCABLE TRUST, *Plaintiff/Counter-Defendant/Appellant*,

*v.*

PHOENIX ORCHARD GROUP I, L.P., et al., *Defendants/Counter-Claimants/ Intervenors/Appellees.*

No. 1 CA-CV 17-0642
FILED 10-2-2018

Appeal from the Superior Court in Maricopa County

Nos.  CV2015-011768
CV2016-000284
(Consolidated)

The Honorable Dawn M. Bergin, Judge

**AFFIRMED**

COUNSEL

Barrett & Matura P.C., Scottsdale
By Jeffrey Matura, Amanda J. Taylor
*Counsel for Plaintiff/Counter-Defendant/Appellant*

Freeman Law P.L.L.C., Scottsdale
By Shelton L. Freeman, Jason M. Venditti, Elizabeth C. Heims
*Counsel for Defendants/Counter-Claimants/Intervenors/Appellees*

---

**OPINION**

---

Presiding Judge Kenton D. Jones delivered the Opinion of the Court, in which Judge Diane M. Johnsen and Judge Paul J. McMurdie joined.

---

J O N E S, Judge:

¶1        The Judson C. Ball Revocable Trust (the Trust) challenges the trial court's determination that it lacked standing to pursue derivative claims on behalf of Phoenix Orchard Group I, L.P. and Phoenix Orchard Group II, L.P. (collectively, POG) after its partnership interests in the entities were rescinded.   In this Opinion, we adopt the continuous ownership rule, which requires a plaintiff in a derivative action to continue to possess an interest in the entity on whose behalf it sues throughout the litigation.   Because the Trust no longer has any interest in POG, it lacks standing to pursue its derivative claims.   Accordingly, we affirm the court's order dismissing the Trust's claims.

**FACTS AND PROCEDURAL HISTORY**

¶2        In 2006, the Trust bought limited partnership interests in POG.   Nine years later, the Trust sued POG and related parties,[1] alleging violations of the Arizona Securities Act.   *See* Ariz. Rev. Stat. (A.R.S.) §§ 44-1801[2] to -2126.   Within its complaint, the Trust demanded either rescission of its investments or damages, and tendered the securities to POG.   *See* A.R.S. § 44-2001(A) (stating a fraudulent sale of securities "is voidable at the election of the purchaser").   In its answer, POG accepted the tender and counterclaimed for a declaration that the rescission was valid and complete.

---

[1]        These defendants included Roger L. and Jean Ellen Stevenson; John P. and Lillian J. Norton; John R. and Doris Norton; Stevenson Family Farming, L.P.; Norton Stevenson Farming, L.P.; Cotton Norton Stevenson Consulting, Inc.; the Stevenson Family Living Trust Dated 7/11/1997; John P. Norton as Trustee of the Norton Family Living Trust as Restated November 15, 2002; and Citrines Operations, Inc.

[2]        Absent material changes from the relevant date, we cite a statute's current version.

¶3          In January 2016, the Trust filed a separate limited partnership derivative action on behalf of POG, alleging other partners and participants had breached the partnership agreements and the offering documents by making various payments "that appeared to be not allowed within the offering documents or partnership agreements."[3]  *See* A.R.S. § 29-356.  A few months later, the trial court approved the rescission of the Trust's investment in POG and entered final judgment on the Trust's fraud claims in the first case, which was later affirmed by this Court.  *See Judson C. Ball Revocable Tr. v. Phx. Orchard Grp. I, L.P.*, 1 CA-CV 16-0557, 2018 WL 283049 (Ariz. App. Jan. 4, 2018) (mem. decision).  POG then intervened in the derivative action and moved to dismiss on the ground that the Trust was no longer a partner and therefore lacked standing to pursue the derivative claims.  After conducting a detailed analysis of relevant authorities, the court agreed and dismissed the complaint.

¶4          The Trust timely appealed a final judgment entered pursuant to Arizona Rule of Civil Procedure 54(b).  We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

¶5          The Trust had standing to file the derivative claims because it was a limited partner in POG at the time it filed its complaint.  The only issue on appeal is whether the Trust lost its standing after its partnership interests were rescinded.  Whether a party has standing presents a question of law subject to *de novo* review.  *Home Builders Ass'n of Cent. Ariz. v. Kard*,

---

[3]          A derivative claim is one brought by a shareholder or partner to enforce an entity's cause of action against its officers and directors or third parties.  *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95-96 (1991) (citations omitted).  Generally, an action is derivative in nature "if the gravamen of the complaint is injury to the [entity], or to the whole body of its stock or property without any severance or distribution among individual holders, or if it seeks to recover assets for the [entity asserting the claim] or to prevent the dissipation of its assets."  *Albers v. Edelson Tech. Partners L.P.*, 201 Ariz. 47, 52, ¶ 17 (App. 2001) (quoting *Funk v. Spalding*, 74 Ariz. 219, 223 (1952)).  Although this case involves a derivative action brought on behalf of a limited partnership, we look to cases addressing corporate derivative claims for guidance.  *See, e.g.*, *Simms v. Rayes*, 234 Ariz. 47, 51, ¶¶ 14-15 (App. 2014) (applying cases involving corporate derivative actions to resolve a derivative claim filed by a partner in a limited liability partnership).

219 Ariz. 374, 377, ¶ 8 (App. 2008) (citing *Robert Schalkenbach Found. v. Lincoln Found., Inc.*, 208 Ariz. 176, 180, ¶ 15 (App. 2004)).

**¶6**　　　　A limited partner may file a derivative action on behalf of the limited partnership "if general partners with authority to do so have refused to bring the action or if an effort to cause those general partners to bring the action is not likely to succeed." A.R.S. § 29-356. By statute:

> [T]he plaintiff shall be a partner at the time of bringing the action and:
>
> (1)　　Shall have been a partner at the time of the transaction of which he complains; or
>
> (2)　　His status as a partner shall have devolved upon him by operation of law or pursuant to the terms of the partnership agreement from a person who was a partner at the time of the transaction.

A.R.S. § 29-357. By rule:

> The complaint must:
>
> (1)　　be verified;
>
> (2)　　allege facts sufficient to show that the plaintiff has standing to maintain the derivative action; and
>
> (3)　　allege facts sufficient to show that the plaintiff satisfies all statutory and other requirements under the law for maintaining the derivative action.

Ariz. R. Civ. P. 23.1(b).

**¶7**　　　　The Trust argues that neither the statutes nor the rule expressly require the plaintiff in a partnership derivative action to continue to hold a partnership interest after filing the complaint. The Trust points out that Rule 23.1(b) was amended in 2017 to eliminate language specifying that a "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association." In the absence of this language in the current rule, the Trust contends it need only prove it was a limited partner of POG when it *filed* the derivative complaint. Appellees, on the other hand, urge

4

us to join the majority of jurisdictions that have adopted a "continuous ownership" requirement as a matter of common law.

¶8 As an initial matter, we do not agree that the recent elimination of the express "fairly and adequately represent" language from Rule 23.1(b) mandates rejection of the continuous ownership rule in Arizona. The current version of Rule 23.1(b) states that a derivative complaint must "allege facts sufficient to show that the plaintiff satisfies all statutory and other requirements under the law for maintaining the derivative action." The current rule's acknowledgement of requirements other than those imposed by statute affords room for application of well-reasoned common law principles where appropriate.

¶9 A derivative action, by its very nature, challenges the power of the entity's management. *Ala. By-Prods. Corp. v. Cede & Co. ex rel. Shearson Lehman Bros., Inc.*, 657 A.2d 254, 264-65 (Del. 1995). Given this inherent conflict, Delaware courts have held, as a matter of common law, that a derivative plaintiff must have "an adequate interest in vigorously litigating the claim." *Id.* at 265 (quoting *Portnoy v. Kawecki Berylco Indus., Inc.*, 607 F.2d 765, 767 (7th Cir. 1979)). Once the derivative plaintiff no longer has an ownership interest in the entity upon whose behalf the suit was brought, the plaintiff no longer has standing because it has no financial interest in recovery and "may lose any incentive to pursue the litigation adequately." *Id.* at 265-66 (quoting *Portnoy*, 607 F.2d at 767).

¶10 Accordingly, in Delaware "[t]o have standing to maintain a shareholder derivative suit, a plaintiff must be a shareholder at the time of the filing of the suit and must remain a shareholder throughout the litigation." *Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348, 354 (Del. 1988). Courts in other jurisdictions have adopted the continuous ownership requirement for the same reasons, even when it is not expressly required by statute. *See Portnoy*, 607 F.2d at 767; *Grosset v. Wenaas*, 42 Cal. 4th 1100, 1109-10 (2008); *Timko v. Triarsi*, 898 So. 2d 89, 91-92 (Fla. Dist. Ct. App. 2005); *Bacigalupo v. Kohlhepp*, 240 S.W.3d 155, 157 (Ky. Ct. App. 2007); *White ex rel. Banes Co. Derivative Action v. Banes Co.*, 866 P.2d 339, 342 (N.M. 1993).

¶11 Not all jurisdictions have adopted the continuous ownership requirement. Indeed, the Trust urges us to follow the Supreme Court of North Carolina in *Alford v. Shaw*, which found "no requirement of continu[ous] share ownership" in the plain language of the applicable statute. 398 S.E.2d 445, 449 (N.C. 1990); *accord Ross-Williams ex rel. Sprint Nextel Corp. v. Bennett*, 419 P.3d 608, 626-27 (Kan. App. Ct. 2018). But neither *Alford* nor the Trust address the considerations that led Delaware and other

jurisdictions to adopt the continuous ownership requirement as a matter of common law — reasons that we find persuasive.[4] Moreover, *Alford* is distinguishable because, unlike the present case where the Trust sued for and obtained rescission, the *Alford* plaintiff alleged the defendant corporation wrongfully deprived him of his interest via a fraudulent merger. *Alford*, 398 S.E.2d at 451-52. Although equitable considerations may warrant an exception to the continuous ownership requirement when the plaintiff is wrongfully deprived of standing, *see, e.g.*, *Lewis v. Anderson*, 477 A.2d 1040, 1046 n.10 (Del. 1984) (recognizing an exception to the continuous ownership requirement where the merger that deprived the plaintiff of ownership is the subject of a claim of fraud) (citing *Bokat v. Getty Oil Co.*, 262 A.2d 246, 249 (Del. 1970)), we need not and do not address exceptions that may apply under circumstances not presented here.

¶12 We find the Delaware courts' reasoning for adopting the continuous ownership requirement both sound and consistent with longstanding Arizona common law. Although Arizona's constitution does not require standing to sue, we nonetheless generally require that each party have an actual interest in the outcome of the litigation. *See Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Ariz.*, 148 Ariz. 1, 6 (1985). This ensures that our courts "do not issue mere advisory opinions, that the case is not moot and that the issues will be fully developed by true adversaries." *Id.* Combining the continuous ownership rule with the statutory and rule requirements serves that principle by ensuring that a derivative action is both brought and then maintained by a plaintiff that continues to have an actual interest in the outcome of the litigation.

¶13 The Trust argues that it has a sufficient incentive to continue the litigation on behalf of POG because it may recover attorneys' fees if it prevails. But the Trust cites no authority for the proposition that the mere hope of a fee award will encourage a plaintiff to appropriately and adequately pursue a derivative claim on behalf of a business entity. The potential to recover fees at the end of a case does not confer standing to pursue it or ensure that the claims are litigated by true adversaries. *Cf. Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("Obviously, . . . a plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit. The litigation must give the plaintiff some other benefit besides reimbursement of costs that are a byproduct of the

---

4  Additionally, *Alford* relied upon *Gaillard v. Natomas Co.*, 219 Cal. Rptr. 74 (Ct. App. 1985), which was later disapproved of by the California Supreme Court when it adopted the continuous ownership requirement. *See Alford*, 398 S.E.2d at 449-50; *Grosset*, 42 Cal. 4th at 1114 n.9.

litigation itself [to satisfy Article III of the U.S. Constitution].”); *Lewis v. Cont’l Bank Corp.*, 494 U.S. 472, 480 (1990) (“[An] interest in attorney’s fees is, of course, insufficient to create a[] case or controversy where none exists on the merits of the underlying claim.”) (citing *Diamond v. Charles*, 476 U.S. 54, 70-71 (1986)); *see also Sears v. Hull*, 192 Ariz. 65, 71, ¶ 24 (1998) (noting that Arizona courts consistently require standing similar to that imposed by the U.S. Constitution “as a matter of judicial restraint”).

¶14    The Trust also suggests that Delaware adopted the continuous ownership rule because it was consistent with that state’s recognition of a shareholder’s right to bring a direct claim for injury to the organization.  It argues we should decline to follow Delaware’s lead because Arizona law authorizes a direct claim only if a shareholder suffers “an injury separate and distinct from the [entity].”  To the contrary, however, Delaware generally applies the same rule as Arizona: “[T]o have standing to sue individually, rather than derivatively on behalf of the corporation, the plaintiff must allege more than an injury resulting from a wrong to the corporation.”  *Kramer*, 546 A.2d at 351 (citations omitted); *compare Albers*, 201 Ariz. at 52, ¶ 18 (“A shareholder may maintain a direct action . . . when . . . the injuries or damages were sustained by individual shareholders rather than by the corporation.”), *with El Paso Pipeline GP Co. v. Brinckerhoff*, 152 A.3d 1248, 1260 (Del. 2016) (“[T]o prove that a claim is direct, a plaintiff must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation.”) (quotation omitted).  Thus, there is no material difference between Arizona and Delaware law that would justify rejection of the sound policy analysis relied upon by Delaware in adopting the continuous ownership rule.

¶15    Finally, relying on *Workman v. Verde Wellness Center, Inc.*, 240 Ariz. 597 (App. 2016), the Trust contends that continuous ownership is not necessary in the absence of a requirement in statute or rule that the plaintiff fairly and adequately represent the interests of the entity.  *See also Lewis v. Chiles*, 719 F.2d 1044, 1050 n.1 (9th Cir. 1983) (noting the “fairly and adequately” requirement “has served as an anchor for the concept that ownership must extend throughout the life of the litigation”).  The plaintiff in *Workman* was a member of the board of a nonprofit corporation who sued to dissolve the corporation under A.R.S. § 10-11430(B), which explicitly grants a director the right to sue for dissolution. *Workman*, 240 Ariz. at 604-05, ¶¶ 20-23.  The board voted to remove her as a director a few hours after she filed suit and then argued she lacked standing to maintain the case. *Id.* In evaluating the argument, this Court inferred that the corporation had removed the plaintiff from the board because of her suit and held that the

corporation could not moot her claim by ousting her from the board. *Id.* In coming to that conclusion, we made note of the "fairly and adequately" language in the applicable version of Rule 23.1(b) and then broadly explained that "[t]he reason for the requirement is because the derivative plaintiff essentially stands in the shoes of the corporation to enforce the rights of the corporation, and the primary interest the shareholder has in doing so is by virtue of the related interest in protecting his or her shares." *Id*. at 604, ¶ 21. *Workman* does not suggest that principle would not apply absent the language now omitted from Rule 23.1(b). In any event, to the extent the continuous ownership requirement would apply to a corporate dissolution, this Court merely applied an exception to the standing rule, not applicable here, where the plaintiff's "loss of ownership 'is the result of corporate action in which the holder did not acquiesce.'" *Workman*, 240 Ariz. at 604, ¶ 21. *See supra* ¶ 11 (acknowledging possible exceptions to the continuous ownership rule).

**¶16**         In sum, we adopt the continuous ownership rule and hold that, to maintain standing in a derivative action, the plaintiff must not only possess an ownership interest when commencing suit, but must also continue to maintain its ownership interests throughout the litigation. Because the Trust no longer possesses any ownership interest in POG, we conclude, as did the trial court, that the Trust lacks standing to maintain the derivative action.

## CONCLUSION

**¶17**        The trial court's order dismissing the Trust's derivative complaint is affirmed.

**¶18**        Both parties request an award of attorneys' fees incurred on appeal pursuant to A.R.S. § 12-341.01(A) (authorizing an award of attorneys' fees to the successful party in an action arising out of a contract). The Trust's complaint, alleging other partners and participants in POG had violated partnership and operating agreements, arose out of contract for purposes of A.R.S. § 12-341.01(A).  *See Jerman v. O'Leary*, 145 Ariz. 397, 403 (App. 1985) (citing *Sparks v. Republic Nat'l Life Ins.*, 132 Ariz. 529, 544 (1982)). Accordingly, POG, as the successful party, is awarded its costs and reasonable attorneys' fees incurred on appeal upon compliance with ARCAP 21(b).



AMY M. WOOD • Clerk of the Court
FILED:  AA